## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MATTHEW SOPRON,

    Plaintiff,

    v.

FORMER ASSISTANT STATE'S
ATTORNEY SCOTT CASSIDY,
FORMER ASSISTANT STATE'S
ATTORNEY NEIL LINEHAN,
FORMER ASSISTANT STATE'S
ATTORNEY COLLEEN HYLAND,
FORMER ASSISTANT STATE'S
ATTORNEY LAURA SUFFIELD,
INVESTIGATOR LEONARD
BAJENSKI, INVESTIGATOR
WILLIAM MARLEY, INVESTIGATOR
NORFIE DICIOLLA, INVESTIGATOR
THOMAS PTAK, INVESTIGATOR K.
MAICKE, INVESTIGATOR L.
McDONALD, THE COUNTY OF
COOK, DETECTVE GEORGE
HOLMES, DETECTIVE THOMAS
ARGENBRIGHT, SERGEANT A.
GRAFFEO, THE CITY OF CHICAGO,
and UNKNOWN EMPLOYEES OF
THE CITY OF CHICAGO,

    Defendants.

No. 19-cv-08254

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

In 1995, a jury convicted Plaintiff Matthew Sopron for murdering two thirteen-year-old girls, Helena Martin and Carrie Hovel, and the judge sentenced him to natural life. On December 18, 2018, the Circuit Court of Cook County vacated

Plaintiff's conviction after three trial witnesses, who originally implicated Plaintiff in the murder, stated at his postconviction proceedings that they had been coerced by Defendants to testify against Plaintiff. Once released from prison, Plaintiff brought this lawsuit, in which he asserts federal- and state-law claims against Defendants, fifteen identified defendants across the Chicago Police Department and Cook County State's Attorney's Office: four former Cook County Assistant State's Attorneys (the "ASAs"),[1] six Cook County investigators (the "Investigators"),[2] three Chicago Police Department Officers ("the Officers"), and two municipal entities, the City of Chicago (the "City") and Cook County.

Plaintiff alleges that Defendants violated Plaintiff's constitutional rights and caused his wrongful conviction and incarceration by conspiring to frame him and by coercing three individuals to implicate him falsely in the murders, despite knowing that Plaintiff was innocent. To that end, Plaintiff alleges ten counts: a § 1983 fabrication and suppression of *Brady*[3] evidence claim (Count I), a § 1983 pretrial detention claim (Count II), a § 1983 failure to intervene claim (Count III), a § 1983

---

[1] Because Defendant Scott Cassidy did not join the ASA Defendants in their motion to dismiss, all future references to "ASAs" includes only Defendants Linehan, Hyland, and Suffield.

[2] Former Cook County investigators Defendants Leonard Bajenski and Thomas Ptak are deceased. (Dkt. 82-3, 82-3.) In an Order (Dkt. 119) entered on September 30, 2021, the Court granted Plaintiff's unopposed motion to appoint Veronica Lopez as special representative for those deceased Defendants. Ms. Lopez has since filed a motion to dismiss on behalf of those Defendants. (Dkt. 134.) The remaining Cook County investigators Maicke, McDonald, Marley, and DiCiolla also jointly filed a motion to dismiss. (Dkt. 80.) Because the motion to dismiss filed by Ms. Lopez for the deceased investigators (Dkt. 135) is substantively identical to the motion to dismiss filed by the living investigators (Dkt. 81), all future references to the "Investigators" include all the above-mentioned Defendants.

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

conspiracy claim (Count IV), a § 1983 *Monell*[4] claim (Count V, against the City only), a state-law malicious prosecution claim (Count VI), a state-law intentional infliction of emotional distress claim (Count VII), a state-law conspiracy claim (Count VIII), and claims for *respondeat superior* liability (Count IX, against the City only) and indemnification (Count X, against the City and Cook County).

Before the Court are five[5] fully briefed motions to dismiss by the ASAs, the Investigators, the Officers, the special representative for Defendants Bajenski and Ptak (who are now deceased), and the City. For the reasons that follow, the Court grants in part and denies in part the motions to dismiss. The motions are granted as to Count II and denied as to the remaining counts. The Court also grants, without prejudice, the Investigators' motion to dismiss as to Defendants Maicke and McDonald and denies it as to Defendants Marley and DiCiolla.

## I.    BACKGROUND

On December 14, 1995, two thirteen-year-old girls were murdered in a gang shooting outside Hale Elementary School. (Dkt. 124 ¶¶ 20, 22.) Following an investigation, the Chicago Police Department arrested five men in connection with

---

[4] *Monell v. New York City Dep. Soc. Servs.*, 436 U.S. 658 (1978).

[5] After Plaintiff filed his first amended complaint, but before the Court had ruled on the motions to dismiss the original complaint, each Defendant that had originally moved to dismiss the complaint filed a second motion to dismiss the amended complaint adopting the arguments asserted in support of their first-filed motion to dismiss. (*See* Dkt. 129 (the Officers' motion to dismiss); Dkt. 130 (the City's motion to dismiss); Dkt. 131 (the ASA's motion to dismiss); Dkt. 133 (the Investigators' motion to dismiss).) Because Plaintiff's first amended complaint merely substituted Verona Lopez as Special Representative for the deceased Defendants Bajenski and Ptak and is otherwise substantively identical to the original complaint (*see* Dkt. 124), the Court will review the arguments asserted by moving Defendant in their first motions to dismiss in the context of Plaintiff's first amended complaint.

the attack, including Eric Anderson (the shooter), William Bigeck, Eddie Morfin, Nick Morfin, and Nick Liberto. The police obtained three detailed confessions from Bigeck and the Morfin cousins. (*Id.* ¶¶ 23–24.) The Officers interviewed twelve individuals, issued a 37-page report, and closed the matter after the Cook County State's Attorney's Office decided to charge the five individuals. (*Id.* ¶¶ 26–28.) The police investigation, interviews, confessions, and 37-page report did not implicate Plaintiff. (*Id.* ¶¶ 27–29, 32, 61–62.)

After his arrest and confession, Bigeck met with Defendants Cassidy, Linehan (ASA), DiCiolla (Investigator), and Ptak (Investigator) in the hope of striking a deal to avoid the death penalty. (*Id.* ¶¶ 30–31.) At this meeting, Cassidy learned that Plaintiff had visited Nick Morfin's house on the day of the shooting. (*Id.* ¶¶ 33–35.) At that time, Plaintiff alleges, "Defendant Cassidy became fixated on [Plaintiff]." (*Id.* ¶ 36.) Bigeck originally told Defendants that Plaintiff was not involved in the crime. (*Id.* ¶ 37.) But Defendant Cassidy threatened and coerced Bigeck to falsely accuse Plaintiff or go to jail for the rest of his life. (*Id.* ¶¶ 38–39.) "[A]t Defendants' direction," Bigeck eventually agreed to implicate Plaintiff as the one who ordered the shootings. (*Id.* ¶¶ 40–41.)

According to the complaint, Defendants sought to recruit additional witnesses to falsely accuse Plaintiff and so used the same tactics to obtain statements from two more witnesses, John Gizowski and Bryan O'Shea, both of whom eventually declared Plaintiff had ordered the shooting. (*Id.* ¶¶ 43, 48, 50, 53.) Bajenski (Investigator) and Marley (Investigator) "burst through [Gizowski's] front door, and forced [him] to meet

with Defendant Cassidy." (*Id.* ¶ 43.) At the meeting, Defendants Bajenski, Marley, and Cassidy threatened Gizowski "with unfounded perjury, gun, and murder charges" to falsely implicate Plaintiff in the murders. (*Id.* ¶ 44.) Gizowski, like Bigeck, initially told Defendants that Plaintiff was not involved in the murders but then agreed to falsely testify about Plaintiff's role in the shootings. (*Id.* ¶¶ 445–49.) Defendants Cassidy, Hyland (ASA), and Suffield (ASA) next met with O'Shea, who also initially stated Plaintiff was not involved in the murders. Plaintiff alleges that those Defendants eventually coerced O'Shea into agreeing to testify falsely against Plaintiff. (*Id.* ¶¶ 50–53.)

After the meetings with Bigeck, Gizowski, and O'Shea, all individual Defendants held a fourth meeting where they "agreed upon a plan to arrest and falsely charge [Plaintiff] with two counts of murder." (*Id.* ¶¶ 54–55.) The Cook County State's Attorney's Office then charged Plaintiff with two counts of murder and three counts of attempted murder. (*Id.* ¶ 56.) Plaintiff was held in custody for about 45 days before he was released on bond. (*Id.* ¶ 57.) At trial, the only witnesses that testified against Plaintiff were the three witnesses that Plaintiff alleges Defendants coerced into provided false testimony: Bigeck, O'Shea, and Gizowski. (*Id.* ¶¶ 62, 67.) On February 9, 1998, Plaintiff was convicted of first-degree murder; he was later sentenced to natural life. (*Id.* ¶ 67.)

Plaintiff spent the next twenty years in prison, until the December 2018 post-conviction proceeding where Bigeck, O'Shea, and Gizowski recanted their testimony, claiming that they were coerced by Defendants. (*Id.* ¶ 70.) Other witnesses also

testified, including two individuals who claimed that Defendant Cassidy unsuccessfully pressured or threatened them to incriminate Plaintiff. (*Id.* ¶¶ 71–80.) After hearing the testimony, but before the trial court's ruling, the Cook County State's Attorney's Office agreed to an order vacating Plaintiff's conviction and dismissing the reinstated criminal charges against him. (*Id.* ¶ 82); *People v. Sopron*, No. 96-CR-2647102 (Cir. Ct. Order, Dec. 18, 2018).

## II. LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (cleaned up). In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678–79.

## III.   DISCUSSION

Defendants (other than Cassidy who has not filed a motion to dismiss) raise several challenges to Plaintiff's complaint. *First*, Defendants argue that Plaintiff's Fourth Amendment and IIED claims are time-barred. (Dkt. 40 at 9–10; Dkt. 42 at 1;[6] Dkt. 79 at 20–21; Dkt. 81 at 14–15; Dkt. 135 at 14–15;) *Second*, Defendants argue that Plaintiff's complaint contains "group pleading" that is deficient under Rule 8(a) of the Federal Rules of Civil Procedure. (Dkt. 40 at 5–6; Dkt. 42 at 1; Dkt. 79 at 9–12; Dkt. 81 at 11–12 Dkt. 135 at 11–12.) *Third*, Defendants individually contend that each of Plaintiff's claims fails the plausibility test under *Iqbal/Twombly*. (*See* Dkt. 40; Dkt. 42; Dkt. 79; Dkt. 81; Dkt. 135.) The Court addresses each argument in turn.

---

[6] The City "adopts and incorporates the arguments and authorities relied upon by the Officer Defendants in support of its motion to dismiss." (Dkt. 42 at 1.)

### A.    Statute of Limitations

The statute of limitations in Illinois to bring a claim under 42 U.S.C. § 1983 is two years. *See Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017). This is undisputed among the parties; instead, they disagree over when certain claims accrued. Defendants argue that Plaintiff's pretrial detention claim (Count II) does not invoke the deferred accrual rule established in *Heck v. Humphrey*, 512 U.S. 477 (1994), and thus has long since expired. (Dkt. 40 at 9–10; Dkt. 42 at 5–6; Dkt. 79 at 20–21; Dkt. 81 at 14–15; Dkt. 135 at 14–15.) The Officers and the City also argue that Plaintiff's IIED claim is time-barred for the same reason. (Dkt. 40 at 14; Dkt. 42 (incorporating arguments from Dkt. 40).) As explained below, Plaintiff's Fourth Amendment claim is untimely, but Plaintiff's IIED claim remains viable.

### 1.    *Plaintiff's Fourth Amendment Claim is Untimely (Count II)*

Defendants contend that Plaintiff's pretrial detention claim lies exclusively under the Fourth Amendment and thus accrued no later than the date of his conviction on February 9, 1998. Plaintiff maintains that his claim did not accrue until his conviction was overturned in December 2018. The Seventh Circuit recently held that a Fourth Amendment claim for unlawful pretrial detention accrues upon plaintiff's release from detention, and not upon the favorable termination of the charges against the plaintiff. *Smith v. City of Chicago*, 3 F.4th 332, 338–39 (7th Cir. 2021) (quoting *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019)). Accordingly, and

for the reasons below, Plaintiff's Fourth Amendment claim is not subject to the *Heck* bar and is therefore untimely.

When a § 1983 cause of action accrues "is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Generally, accrual occurs when a plaintiff has a complete cause of action. *Id.* But where a claim challenging a state criminal proceeding or conviction is at issue, that cause of action does not accrue until the conviction has been invalidated and criminal proceedings terminate in the criminal defendant's favor. *Heck*, 512 U.S. at 489. The Supreme Court upheld this rule in *McDonough v. Smith*, and applied *Heck*'s bar "not only to a challenge to an extant criminal conviction or sentence, but also to a claim that 'necessarily threatens to impugn . . . the prosecution itself.'" *Smith*, 3 F.4th at 338–39 (quoting *McDonough*, 138 S. Ct. at 2159).

Whether "a judgment in favor of the plaintiff would necessarily imply" the invalidity of his extant conviction or sentence, *id.* at 2159–60, is a fact-specific inquiry that requires the Court to look to the nature of the allegations underlying the claim. *See Viramontes v. City of Chicago*, 840 F.3d 423, 428 (7th Cir. 2016) (collecting cases). Plaintiff alleges that Defendants violated his Fourth and Fourteenth Amendment rights by causing him to be detained pending trial based solely on three false witness statements they knew were fabricated. (*See* Dkt. 124, Count II.) Plaintiff's pretrial detention claim appears to dovetail with his due process claim: that Defendants conspired to frame Plaintiff by, among other things, fabricating evidence to falsely implicate Plaintiff in the murders, and that misconduct led directly to Plaintiff's

wrongful detention, criminal prosecution, and conviction (*see id.*, Count I). But "a due process claim differs in kind from a Fourth Amendment claim." *Smith*, 3 F.4th at 339. Unlike a due process claim challenging an entire prosecution, a "Fourth Amendment claim—whether about a search, arrest, or pretrial detention—can sometimes be severed from the rest of the prosecution." *Id.* at 340. And those differences "are significant enough to warrant dissimilar treatment under *Heck*." *Id.* at 338.

In *Smith v. City of Chicago*, the Seventh Circuit held that the statute of limitations period for filing a § 1983 action commenced when the plaintiff was released from detention—not when the Court granted plaintiff favorable termination of charges. 3 F.4th at 339. The *Smith* court distinguished *due process* claims that "attack[] the whole prosecution" from *Fourth Amendment* claims that "merely anticipate" a future conviction. *Id.* at 339–40. And "the ability of courts to stay actions pending the resolutions of the state processes" resolves the "concern about federal courts interfering with ongoing state criminal prosecutions." *Id.* at 339. Thus, "a Fourth Amendment claim is not barred by *Heck* even if it could possibly affect a future prosecution." *Id.*

Defendants correctly note that a wrongful pretrial detention claim lies exclusively under the Fourth Amendment. *Anderson v. City of Rockford*, 932 F.3d 494, 512 (7th Cir. 2019). Accordingly, Plaintiff's Fourth Amendment claim accrued when the Fourth Amendment wrong ended. *Smith*, 3 F.4th at 339. Pretrial detention ends either when a pretrial detainee is released on bond or, at latest, at his conviction. *Knox v. Curtis*, 771 F. App'x 656, 658 (7th Cir. 2019). Because the record makes no

10

mention of Plaintiff having been released on pretrial bond, and viewed in the light most generous to Plaintiff, Plaintiff's Fourth Amendment claim accrued, and the § 1983 statute of limitations began to run, at his conviction on February 9, 1998. Accordingly, Plaintiff's unlawful pretrial detention claim (Count II)—brought over 20 years later—is untimely.[7]

### 2. Plaintiff's IIED Claim is Timely (Count VII)

The Officers argue that Plaintiff's claim for IIED accrued on the day he was arrested and is now time-barred because there is no "continuing wrong" doctrine in tort for IIED claims. *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013). Plaintiff responds that *Heck* barred his IIED claim and so that claim did not accrue until his conviction was overturned. *See Lieberman v. Liberty Healthcare Corp.*, 948 N.E.2d 1100, 1108 (Ill. Ct. App. 2011) (extending the *Heck* doctrine to state law tort claims that, if successful, would be inconsistent with ongoing criminal proceedings or an existing conviction).

In Illinois, an IIED claim against a local entity, or its employees, has a one-year statute of limitations. *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013); *see* 745 ILCS 10/8-101(a). In *Bridewell*, the Seventh Circuit held that "a claim of

---

[7] In their motion to dismiss, the Officers argued that Plaintiff's claims of failure to intervene (Count III) and § 1983 conspiracy (Count IV) are derivative of Plaintiff's Fourth Amendment claim (Count II), which Defendants correctly argued was untimely. (Dkt. 40 at 10–12.) Plaintiff responded to the statute of limitations argument but did not address the potentially derivative nature of Counts III and IV. Generally, an argument not addressed in response to a motion to dismiss is waived. *See United Cent. Bank v. Davenport Est. LLC*, 815 F.3d 315, 318 (7th Cir. 2016). Because it is not clear that Counts III and IV are solely supported by Count II sufficient to warrant dismissal based on Count II's untimeliness, the Court nevertheless reviews the potentially fully derivative Counts III and IV.

intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of the arrest." *Bridewell*, 730 F.3d at 678. But *Bridewell* did not address *Heck* or Plaintiff's situation. Unlike *Bridewell*, Plaintiff does not base his IIED claim on his mere arrest and prosecution. Rather, Plaintiff alleges that Defendants intentionally inflicted emotional distress by fabricating evidence, coercing witnesses to commit perjury, and withholding exculpatory evidence, which ultimately caused his wrongful conviction. Because the facts alleged in support of Plaintiff's IIED claim "directly attack the validity of the conviction," Plaintiff could not have brought such an IIED claim until his conviction was overturned. *Parish v. City of Elkhart*, 614 F.3d 677 (7th Cir. 2010) (addressing an identical situation by applying Indiana's adoption of *Heck*); *Lieberman v. Liberty Healthcare Corp.*, N.E.2d 1100, 1108 (Ill. Ct. App. 2011).

Accordingly, Plaintiff's IIED claim accrued on December 18, 2018, when Plaintiff received favorable termination of his conviction. Plaintiff's complaint, which was filed on December 17, 2019, was timely filed within the one-year statute of limitations.

### B.    Group Pleading

Defendants contend that Plaintiff's complaint fails to plead their "personal involvement" in the alleged constitutional violations. (Dkt. 40 at 6; Dkt. 78 at 1; Dkt. 81 at 12; Dkt. 135 at 11–12; *see* Dkt. 42 at 1.) For the reasons that follow, and with

the exception of Defendants Maicke and McDonald, Plaintiff's complaint does not fail for impermissible group pleading.

Although liability under § 1983 requires that a defendant be personally responsible for a constitutional violation, *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013), Rule 8(a) is "not so rigid that it requires a plaintiff, without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific officer." *Hyung Seok Koh v. Graf*, 2013 WL 5348326 at *4 (N.D. Ill. Sept. 24, 2013). Rather, in some circumstances, "an allegation directed at multiple defendants can be adequate to plead personal involvement." *Riviera v. Lake City*, 974 F. Supp. 2d 1179, 1194 (N.D. Ill. 2013) (citing *Brooks*, 578 F.3d at 582). Of course, a plaintiff whose complaint relies on so-called group pleading "must eventually tie particular officers to particular injuries to survive summary judgment." *Hyung Seok Koh*, 2013 WL 5348326 at *5. But at the motion-to-dismiss stage, a plaintiff "may generally name those responsible for the alleged violations," including by grouping Defendants into subgroups of individuals who are alleged to have acted jointly. *Vandenburgh v. Bannockburn Police Officer Robert Ogden*, 2016 WL 403663, at *5 (N.D. Ill. Feb. 3, 2016).

Plaintiff alleges that Defendants Linehan, Cassidy, DiCiolla, and Ptak met with Bigeck shortly after his arrest. (Dkt. 124 ¶¶ 31–40.) At that meeting, Defendants first learned that Plaintiff had visited Nick Morfin on the day of the shooting. (*Id.*) But although Bigeck told Defendants that Plaintiff had nothing to do with the double

murder (*id.* ¶ 37), Cassidy threatened Bigeck with the choice either to "falsely accuse [Plaintiff] or go to jail for the rest of his life." (*Id.* ¶¶ 38–41.) Bigeck eventually agreed to provide the requested false testimony. (*Id.*)

Plaintiff also alleges that a similar sequence of events transpired at a second meeting between Gizowski and Defendants Bajenski, Marley, and Cassidy, (*id.* ¶¶ 43–49), and again at a third meeting between O'Shea and Defendants Hyland, Suffield, and Cassidy (*id.* ¶¶ 50–53). Plaintiff further states that all named individual Defendants attended a fourth meeting "documented in a police report," where they discussed evidence they knew to be false gathered against Plaintiff, and agreed to carry out the plan to falsely arrest and prosecute Plaintiff. (*Id.* ¶¶ 54–55.)

The factual allegations concerning the first three meetings—where Cassidy coerced witnesses into providing false testimony against Plaintiff—specifically identifies ASAs Linehan, Hyland, and Suffield, and Investigators DiCiolla, Marley, Ptak, and Bajenski as participants. Accordingly, those allegations sufficiently put the ASAs and Investigators DiCiolla, Marley, Ptak, and Bajenski "on notice of what exactly they might have done to violate [Plaintiff's] rights" at that time, thus satisfying Rule 8 as to those Defendants. *Brooks*, 578 F.3d at 582.

Unlike for the first three, the factual allegations concerning the fourth meeting—where Defendants "agreed to falsely accuse [Plaintiff]" and "agreed upon a plan to arrest and falsely charge [Plaintiff]"—are collectively directed at all the individual Defendants. (Dkt. 124 ¶¶ 54–56.) Defendants Maicke, McDonald, and the Officers are the only Defendants identified as participants to the fourth meeting

14

without having also been identified as participants to at least one of the first three meetings. To determine whether the complaint sufficiently states a claim against Defendants Maicke, McDonald, and the Officers, the Court must look to "the complaint as a whole." *Scott v. City of Chicago*, 195 F.3d 950, 952 (7th Cir. 1999).

Turning first to the allegations against the Officers, Plaintiff states that the Officers' murder investigation—which included five arrests, three detailed confessions, and a 37-page report detailing the Officers' findings—did not implicate Plaintiff in the crime. (Dkt. 124 ¶¶ 23–28.) Once the Cook County State's Attorney's Office charged the five arrestees, the Officers closed the matter entirely. (*Id.* ¶¶ 26–28.) But after the alleged conspiratorial meeting, the officers arrested Plaintiff in connection with the murder. (*Id.* ¶¶ 54–56.) Thus, in context, the crux of Plaintiff's claims against the Officers becomes evident: the Officers arrested Plaintiff while knowing that Plaintiff was not involved in the crime. Accordingly, those allegations provide the Officers with sufficient notice of the claims against them, which is all that is required at this stage of the proceedings under Rule 8(a). *See Kuri v. City of Chicago*, 2014 WL 114283, at *7 (N.D. Ill. Jan. 10, 2014) ("A plaintiff may not be able to specify which individual committed which parts of the alleged misconduct before the benefit of discovery") (citing *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009)).

As to the allegations against Investigators Maicke and McDonald, Plaintiff identifies those Defendants as attendees of the fourth meeting. Plaintiff does not, however, specify what, if any, wrongful acts Maicke and McDonald committed either

jointly or individually. Nor do any of the other allegations in the complaint reveal the nature of Maicke and McDonald's participation. Accordingly, the Court finds that Plaintiff fails to provide Maicke and McDonald with fair notice of the claims against them. *See Lattimore v. Vill. Streamwood*, 2018 WL 2183991, at *4 (N.D. Ill. May 11, 2018) (plaintiffs identified specific acts by one defendant, but "fail[ed] to identify what the other [defendants] did or did not do"); *Atkins v. Hasan*, 2015 WL 3862724, at *3 (N.D. Ill June 22, 2015) (plaintiff alleges that specific acts could have been committed by the defendants or by other unidentified individuals).

Plaintiff acknowledges that deficiency by "agree[ing] to dismiss Defendants Maicke and McDonald without prejudice." (Dkt. 98 at 1 n.1.) Plaintiff did not respond to the arguments advanced on behalf of Defendants Maicke and McDonald in either Defendants' motion to dismiss (Dkt. 80) or Defendants' Supplemental Brief (Dkt. 89), but neither has Plaintiff filed a stipulation of dismissal or motion to dismiss Maicke or McDonald from this suit. As a result, the Court construes Plaintiff's representation and subsequent inaction to mean Plaintiff does not oppose the motion to dismiss as to Defendants Maicke and McDonald; the Court thus dismisses Defendants Maicke and McDonald from this suit.

Although "group pleading is not an ideal practice," it is permissible. *Hyung Seok Koh*, 2013 WL 5348326, at *5. Plaintiff's complaint sufficiently gives the ASAs, the Officers, and the Investigators Marley and DiCiolla fair notice of the claims against them. Conversely, Plaintiff fails to meet the minimum notice pleading requirements as to Investigators Maicke and McDonald. Accordingly, the motion to

16

dismiss is denied as to all Defendants except Maicke and McDonald, who are dismissed without prejudice.

## C. The ASA Defendants

The ASAs also move to dismiss Plaintiff's claims of fabrication (Count I), failure to intervene (Count III), malicious prosecution (Count VI), and IIED (Count VII) on the ground that Plaintiff fails to state the underlying claim of conspiracy against them. At the outset, the ASAs contend that Plaintiff's complaint focuses on the actions of former Cook County prosecutor Defendant Scott Cassidy (who has not joined the ASA Defendants' motion to dismiss) and does not connect those actions to the ASAs. (Dkt. 79 at 9–17.) Second, the ASAs claim they are shielded by absolute prosecutorial immunity because they were sworn Cook County Assistant State's Attorneys at all relevant times. (Dkt. 79 at 17–20.) Each argument is addressed in turn.

### 1. Section 1983 Conspiracy (Count IV) / State-law Conspiracy (Count VIII)

To state a § 1983 conspiracy claim, Plaintiff must allege facts sufficient to show: (1) Defendants reached an agreement to deprive Plaintiff of his constitutional rights; and (2) an overt act in furtherance of the conspiracy that actually deprived Plaintiff of those rights. *See Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). Similarly, to plead conspiracy under Illinois state law, Plaintiff must allege: "(1) a combination of two or more persons; (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means; (3) in the further[ance] of which one of the conspirators committed an overt tortious

17

or unlawful act." *Davidson v. Worldwide Asset Purchasing, LLC*, 914 F. Supp. 2d. 918, 923–24 (N.D. Ill. 2012) (quoting *Milliman v. McHenry Cnty.*, 2012 WL 5200092, at *3 (N.D. Ill. Oct. 22, 2012)). At the pleading stage, it is enough for Plaintiff "merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Hill v. Cook County*, 463 F. Supp. 3d 820, 840 (N.D. Ill. 2020) (quoting *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002)).

Plaintiff has sufficiently identified the "who, what, and when" against the ASAs to survive a motion to dismiss the conspiracy claim. *See id*. Plaintiff alleges that the ASAs were present at the meetings where Defendant Cassidy coerced three witnesses into providing false testimony against Plaintiff (Dkt. 124 ¶¶ 31–40, 43–49, 50–53), and at the fourth conspiratorial meeting where all named individual Defendants "discussed the fact that Bigeck, Gizowski, and O'Shea had agreed to falsely accuse [Plaintiff]" and agreed upon a plan to arrest and prosecute Plaintiff. (*Id.* ¶¶ 54–55.) Plaintiff thus identifies the parties to the conspiracy: all named individual Defendants, including the ASAs. Plaintiff asserts the general purpose of the conspiracy: to implicate Plaintiff in the murders. And Plaintiff alleges the approximate time frame of the conspiracy: sometime after Bigeck was indicted for murder but before Plaintiff's arrest.

The ASAs make two arguments in support of their motion to dismiss Plaintiff's conspiracy claim against them. *First*, the ASAs ask the Court not to liberally construe pleadings based "on information and belief" because, unlike the ordinary scenario where "pleadings concern matter peculiarly within the knowledge of the defendants,"

18

the evidence in this case is in Plaintiff's hands. (Dkt. 79 at 10–11.) Because Plaintiff already litigated his case through the appellate and post-conviction process, which included factual discovery, the ASAs argue that Plaintiff should not be permitted to plead the existence of a smoking gun, such as the fourth meeting "documented in a police report," based solely "on information and belief." (*Id.*)

In general, the Court need not "credit rank speculation." *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d. 960, 969 (N.D. Ill. 2020). But a fact alleged upon "information and belief" does not make a pleading insufficient under Rule 8 where, as here, there is a reasonable basis to suspect the facts are true. *See Brooks*, 578 F.3d at 581. All three witnesses who implicated Plaintiff in the murders recanted their testimony at the post-conviction proceedings and stated under oath that they had been coerced by Defendants to testify against Plaintiff. (Dkt. 124 ¶ 70.) That creates a plausible inference—given the extremely liberal treatment at the pleading stage— that the ASAs knew they were presenting false testimony against Plaintiff.

*Second*, the ASAs argue that Plaintiff makes conclusory allegations that are not entitled to the presumption of truth. The ASAs ask the Court to ignore "threadbare recitations of the elements," such as the words "agreed," "falsely," and the phrase "no probable cause to suspect Mr. Sopron of those crimes." (Dkt. 79 ¶¶ 9– 12.) But " 'legal conclusions can provide the framework of a complaint' so long as they are 'supported by factual allegations.' " *Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 679). As explained above, Plaintiff sufficiently alleges facts supporting the inference that the ASAs engaged in a conspiracy with

Defendant Cassidy against Plaintiff. Reviewed as a whole, therefore, Plaintiff's complaint sufficiently states a conspiracy claim against the ASAs.

### 2. *Absolute Immunity*

Prosecutors are "absolutely immune from liability under § 1983 for their conduct in initiating a prosecution and in presenting the State's case," to the extent that conduct is "intimately associated with the judicial phase of the criminal process." *Burns v. Reed*, 500 U.S. 478, 486 (1991) (internal quotations omitted). But a prosecutor acting in an investigative capacity is not so shielded. *Lewis v. Mills*, 677 F.3d 324, 331 (7th Cir. 2012) ("a showing that a prosecutor investigated and fabricated evidence against a target would automatically defeat absolute prosecutorial immunity, even if that target was later brought to trial") (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 276 (1993)). Whether an action falls within the scope of prosecutorial duties depends upon the function of that action. *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012).

Plaintiff's factual allegations sufficiently support the inference that the ASAs' conduct extended beyond that which is "intimately associated with the judicial phase of the criminal process." *See Burns*, 500 U.S. at 486. Plaintiff asserts that the ASAs witnessed Cassidy coerce three witnesses into testifying falsely against Plaintiff and then conspired with all named individual Defendants to frame Plaintiff using the fabricated evidence. *See Walrath v. United States*, 35 F.3d 277, 282 (7th Cir. 1994) ("[T]he prosecutor's alleged fabrication of evidence during the investigative phase of

the state's case [is] conduct which the Supreme Court held not to be entitled to absolute immunity.").

What is more, Plaintiff pleaded that the ASAs "sought to recruit additional witnesses to falsely accuse [Plaintiff]" and ordered Investigators Bajenski and Marley to "burst through [John Gizowski's] front door, and force[] John to come with them to meet Defendant Cassidy." (Dkt. 124 ¶¶ 42–43). The ASAs are alleged to have known that the evidence used to secure Plaintiff's arrest was fabricated and thus, by extension, that no probable cause existed to believe Plaintiff had committed the murders. *See Kuri*, 2017 WL 4882338, at \*7 ("Defendants cannot manufacture their own probable cause by fabricating evidence."). That the first meeting was held at the request of Bigeck who "approached the prosecutor's office hoping to strike a deal" does not change this outcome. *See Buckley*, 509 U.S. at 274 ("A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.").

The ASAs have articulated no other reason to dismiss the claims against them. Accordingly, in view of the foregoing analysis, the Court denies the ASAs' motion to dismiss.

### D.    Investigator Defendants

The Investigators move to dismiss Plaintiff's fabrication claim (Count I) and its derivative claims of failure to intervene and civil rights conspiracy (Counts III and IV), as well as Plaintiff's malicious prosecution and IIED claims (Counts VI and VII) and his derivative state-law conspiracy claim (Count VIII). (Dkt. 81 at i; Dkt. 135 at

i.) Because the Court has already dismissed Investigators Maicke and McDonald, the Court will address each argument as it pertains to the remaining Investigators, namely, Marley, DiCiolla, Bajenski, and Ptak.

### 1. Fabrication of Evidence Claim (Count I)

As well as their argument that Plaintiff's complaint fails for group pleading, which the Court has addressed and rejected above, the Investigators make three additional arguments in support of their motion to dismiss Plaintiff's fabrication claim. *First*, the Investigators argue that they cannot be held liable under *Brady* absent proof of the exculpatory evidence's existence. (Dkt. 81 at 11; Dkt. 135 at 10–11.) *Second*, the Investigators argue that Plaintiff's suppression of evidence theory fails because Plaintiff did not allege a lack of opportunity to cross-examine the three witnesses against him. (Dkt. 81 at 12; Dkt. 135 at 11.) *Third*, the Investigators argue that Plaintiff has not shown that the three witnesses committed perjury at the original trial. (Dkt. 81 at 14; Dkt. 135 at 13.)

In so arguing, however, the Investigators attempt to hold Plaintiff to a higher pleading standard than is required at the motion-to-dismiss stage. The Investigators cite only to cases involving the sufficiency of evidence gathered at the summary judgment stage or in post-trial appeals, and those arguments are better suited for later in litigation. But the Court is addressing Defendants' motions to dismiss, *see McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 427 (7th Cir. 2005) (pleaders have no obligation to plead legal theories), where the Court must accept as true the complaint's factual allegations and draw all reasonable inferences in Plaintiff's favor.

*Iqbal*, 556 U.S. at 678. As explained above, Plaintiff has sufficiently alleged facts to support the inference that the Investigators participated in the conspiracy.

      2.    *Failure to intervene (Count III) and Civil Rights Conspiracy (Count IV)*

      The Investigators also argue that Plaintiff's failure to intervene (Count III) and federal conspiracy (Count IV) claims must fail because they are derivative of Plaintiff's implausible underlying fabrication (Count I) and untimely unlawful pretrial detention (Count II) claims. (Dkt. 81 at 15–18; Dkt. 135 15–18.) As to Count I, the Investigators argue that Plaintiff failed to state sufficient knowledge to support a plausible fabricated evidence claim. Plaintiff does state, however, that Defendants DiCiolla, Marley, Bajenski, and Ptak were present when Defendant Cassidy coerced Bigeck and Gizowski to provide a false statement against Plaintiff. (*See* Dkt. 124 ¶¶ 37–41 (expressly identifying DiCiolla and Ptak at the meeting with Bigeck); *id.* ¶¶ 43–49 (expressly identifying Marley and Bajenski at the meeting with Gizowski).) Accepting as true the factual allegations in the complaint, Plaintiff pleads enough factual content to permit the inference that the Investigators had knowledge of the falsity of Bigeck and Gizowski's statements. *See Boucher v. Fin. Sys. Of Green Bay, Inc.*, 880 F.3d 362, 365–66 (7th Cir. 2018). As to Count II, the Court has already dismissed Plaintiff's pretrial detention claim as untimely. Regardless, Plaintiff has sufficiently stated a conspiracy claim, which underlies Counts III and IV, against the Investigators.

3.      *Malicious Prosecution (Count VI)*

The Investigators also argue that Plaintiff's malicious prosecution claim must fail because the complaint neither alleged that the Investigators played a significant role in Plaintiff's prosecution nor otherwise asserted the presence of malice. (Dkt. 81 at 18–20; Dkt. 135 at 18–20.) Once again, the Investigators rely exclusively on summary-judgment case law. Regardless, and for the following reasons, Plaintiff has sufficiently stated a claim for malicious prosecution.

To state a claim for malicious prosecution, Plaintiff must show: "(1) the commencement or continuation of an original criminal or civil proceeding by the defendants; (2) termination of the proceeding in his favor; (3) the absence of probable cause; (4) the presence of malice on defendants' part; and (5) damages." *Wade v. Collier*, 783 F.3d 1081, 1085 (7th Cir. 2015). Specifically, the Court must evaluate whether the defendant "was actively instrumental in causing the prosecution" such that "the presumption of prosecutorial independence can be overcome." *Beaman*, 131 N.E.3d at 495. For the Court to grant a motion to dismiss phase, to reiterate, the complaint need only "give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

Plaintiff provides enough details in his complaint to present a story that the Investigators engaged in wrongful conduct that played a significant role in Plaintiff's arrest, prosecution, and conviction. The Investigators are alleged to have participated in at least two of the meetings where Defendant Cassidy coerced Bigeck and Gizowski

24

to provide false testimony against Plaintiff, (Dkt. 124 ¶¶ 37–49), as well as the fourth meeting where all Defendants agreed to use the false evidence to secure Plaintiff's arrest, detention, and criminal prosecution. (*Id.* ¶¶ 54–55.) It is well established that "a jury can infer malice from an absence of probable cause." *Williams v. City of Chicago*, 733 F.3d 749, 760 (7th Cir. 2013). In the Court's view, the complaint adequately alleges that the Investigators possessed improper motive and played a significant role in a corrupt investigation. As a result, Plaintiff has sufficiently stated a claim for malicious prosecution against the Investigators.

### 4. *Intentional Infliction of Emotional Distress (Count VII)*

To state a cause of action for IIED, a plaintiff must show: (1) the conduct involved was truly extreme and outrageous; (2) the defendant intended that his conduct inflict severe emotional distress or knew that there was a high probability that his conduct would cause severe emotional distress; and (3) the defendants' conduct caused severe emotional distress. *Guy v. Riverside Police Officers*, 1999 WL 675296, at *1 (N.D. Ill Aug. 18, 1999). The Investigators argue that, because Plaintiff does not allege facts to support the first two elements, Plaintiff fails to state a claim for IIED. (Dkt. 81 at 20-21; Dkt. 135 at 20–21.) But if, as Plaintiff alleges, Defendants fabricated evidence of Plaintiff's guilt that was then used to secure Plaintiff's conviction for murder, that behavior is sufficiently "outrageous" to support a claim

for IIED. *See Carroccia v. Anderson*, 249 F. Supp. 2d 1016, 1028 (N.D. Ill. 2003). At this preliminary stage, Plaintiff has sufficiently pleaded a plausible claim for IIED.

### 5.     *Civil Conspiracy (Count VIII)*

Finally, the Investigators argue that Plaintiff's civil conspiracy claim fails because the state law claims that underlie it—malicious prosecution and IIED—also fail. (Dkt. 81 at 21–23; Dkt. 135 at 21–23.) Because the Court has already addressed the viability of these claims here, and Defendants offer no alternative arguments, there is nothing more for the Court to address. Accordingly, the Court denies the Investigators' motions to dismiss as it pertains to Defendants DiCiolla, Marley, Bajenski, and Ptak.

### E.     **The Officer Defendants**

Beyond the statute of limitations and group pleading arguments, the Officers challenge the plausibility of Plaintiff's claims of failure to intervene (Count III), § 1983 conspiracy (Count IV), IIED (Count VII), and state law civil conspiracy (Count VIII). (Dkt. 40 at 10–12.) The Court has already explained that Plaintiff's allegations create a plausible inference the Officers knew that three witnesses were coerced into providing false testimony and arrested Plaintiff anyway. Because of this, the challenged "legal conclusions can provide the framework of a complaint" because "they are supported by factual allegations." *Engel*, 710 F.3d at 709 (quoting *Iqbal*, 556 U.S. at 679). Accordingly, Plaintiff sufficiently alleges facts to support the inference that the Officers engaged in a conspiracy with Defendant Cassidy against Plaintiff. Because Plaintiff's fabrication of evidence (Count I) and conspiracy claims

(Counts IV, VIII) undergird Plaintiff's claim of failure to intervene (Count III) and IIED (Count VII), those derivative claims against the Officers also survive.[8]

The Officers also argue that Plaintiff failed to state that the Officers were "actively instrumental" in bringing charges against Plaintiff, as required to state a malicious prosecution claim under Illinois law. (Dkt. 40 at 12–13.) The Officers contend that, beyond executing Plaintiff's arrest based on the ASAs and Investigator Defendants' instructions, they did not play a "significant role" in the prosecution. But police officers "can be liable for commencing or continuing a malicious prosecution even if [they do] not ultimately wield prosecutorial power or actively deceive prosecutors." *Beaman*, 131 N.E.3d at 499. Plaintiff alleges that the Officers agreed with all individual Defendants to falsely accuse and arrest Plaintiff for the murders, despite knowing that Plaintiff was not involved based on their extensive and documented investigation. (Dkt. 124 ¶¶ 27–29, 54–56.) That is sufficient to create, at

---

[8] The Officers rely on statements made by Plaintiff's counsel at Plaintiff's postconviction hearing that purportedly belied the existence of incriminating facts to implicate the Officers and attach a transcript of that hearing to their motion. (*See* Dkt. 40 at 9; Dkt. 40-1; Dkt. 85 at 4–5.) Plaintiff's counsel at the post-conviction hearing stated: "You will not hear from Counsel from [sic] Sopron say anything negative about the Chicago Police Department's investigation in this case [ . . . ;] this case is about a Cook County prosecutor blackjacking the system" (Dkt.40-1.) The Officers insist Plaintiff conceded that, with the benefit of postconviction evidentiary discovery and hearings, he lacked any specific, corroborating facts that the Officers were knowing co-conspirators. Although the Court "may take judicial notice of matters of public record outside the pleading," *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994), Plaintiff's counsel's statements have no bearing on the Defendants' motion; that Plaintiff chose not to challenge the conduct of the Officers then does not constitute a waiver of Plaintiff's right to bring such claims now. Accordingly, the Court will not consider a statement made in a postconviction court to be, as Defendants suggest, a binding judicial admission that requires dismissal of the complaint in this case. *See Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 772 (N.D. Ill. 2011) ("a statement made in one lawsuit cannot be a judicial admission in another").

this preliminary stage, the inference that the Officers played a "significant role" in the arrest, prosecution, and conviction of Plaintiff. *See Beaman*, 131 N.E.3d at 499 ("Police officers may be subject to liability for malicious prosecution if they initiate a criminal proceeding by presentation of false statements, or by withholding exculpatory information from the prosecutor") (cleaned up). Accordingly, Plaintiff has pleaded a plausible malicious prosecution claim against the Officers.

### F. Defendant City of Chicago

The City incorporates the Officers' arguments in support of their motion to dismiss and moves to dismiss Plaintiff's *Monell* (Count V), vicarious liability (Count IX), and indemnification (Count X) claims. To state a valid *Monell* claim, Plaintiff must plausibly allege that the violation of his constitutional rights was caused by: (1) an express municipal policy that, when enforced, deprived the plaintiff of a constitutional right; (2) a widespread practice that amounted to a custom approaching the force of law; or (3) a person with final policymaking authority. *Glisson v. Indiana Dep't of Corrs.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc) (citing *Monell*, 436 U.S. at 691–94). Plaintiff must also demonstrate "requisite causation," which means that "the policy or custom was the 'moving force' behind [the] constitutional deprivation." *Brewer v. Town of Eagle*, —F. Supp. 3d—, 2021 WL 3473243, at *6 (E.D. Wis. 2021) (quoting *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002)).

Plaintiff appears to rely on a widespread practice theory of liability.[9] To

---

[9] In addition to a widespread practice theory of liability, Plaintiff also alleges that his "injuries were caused by express policies, absence of needed express policies . . . and actions

determine whether a plaintiff has sufficiently pleaded a widespread practice, the Court looks to "the instances of misconduct alleged, the circumstances surrounding the alleged constitutional injury, and additional facts probative of a widespread practice or custom." *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1079 (N.D. Ill. 2018). Plaintiff is not required "to identify every other or even one other" individual who was arrested due to Defendants fabricating evidence to cause convictions of innocent people to plead that a widespread practice of evidence fabrication existed. *See White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016). But the widespread practice must "permeate[] a critical mass of an institutional body." *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). Misbehavior by one of a group of officials thus is relevant only where "it can be tied to the policy, customs, or practices of the institution as a whole." *Id.*

The City argues that Plaintiff's claims are supported only by "boilerplate allegations" that lack any nexus to Plaintiff's claims against the City. In so arguing, however, City Defendant holds Plaintiff to a higher standard than is required at the motion-to-dismiss stage. The Supreme Court has made it "very clear," federal courts "must not apply a heightened pleading standard in civil rights cases alleging § 1983 municipal liability." *McCormick*, 230 F.3d at 323. Indeed, another Court in our District "allow[s] 'conclusory' *Monell* complaints to survive motions to dismiss when

---

of policymaking officials for the City of Chicago." (Dkt. 124 ¶ 138.) Plaintiff does not, however, support these assertions with any facts. Further, Plaintiff's suggestion that the Officers were "final policymaking officials within the Chicago Police Department" (*id.* ¶ 106), fails as a matter of law. *See Auriemma v. Rice*, 957 F.2d 397, 399–401 (7th Cir. 1992) (Chicago Police Department superintendent lacked policymaking authority under § 1983).

they are 'sufficient to put the [local governing body] on notice of [plaintiff's] claim against it' and if the plaintiff gives the defendant 'notice of the crux of the plaintiff's charges' and does not '[leave] out facts necessary to give the defendants a complete understanding of the claims made against them.' " *Howard v. Sheriff of Cook Cnty.*, 2016 WL 4366598, at *3 (N.D. Ill. Aug. 16, 2016) (quoting *McCormick v. City of Chicago*, 230 F.3d 319, 323 (7th Cir. 2000)).

Plaintiff alleges that the City has a longstanding policy or practice of, among other things, fabricating evidence to cause the convictions of innocent people, suppressing exculpatory evidence, condoning and facilitating a code of silence, and failing to discipline its officers for misconduct (*See* Dkt. 124 ¶¶ 88–107.) Plaintiff supports these allegations by stating that, since 1986, 70 cases have come to light in which Chicago police officers have fabricated false evidence or have suppressed exculpatory evidence that led to convictions (*id.* ¶ 89), describing a Federal Bureau of Investigation report that discusses Chicago police detectives feeding information to witnesses, coercing witnesses into sticking to a specific theory of the case, and physically abusing witnesses (*id.* ¶ 92), and listing several other cases where such pattern of behavior by the Chicago Police Department was found (*id.* ¶¶ 95–97). Plaintiff has therefore sufficiently stated a plausible *Monell* claim against City. Accordingly, the City's motion to dismiss Count V is denied.

## IV.    CONCLUSION

"[A] failure of proof is not a failure to state a claim." *Walker*, 288 F.3d at 1008. Although Plaintiff has a long way to go to prove his claims against Defendants,

Plaintiff has satisfied the minimal notice pleading requirements to state a plausible claim as to all Counts but untimely Count II. Accordingly, the Court grants in part and denies in part the ASAs' (Dkt. 78; Dkt. 131), the Officers' (Dkt. 39; Dkt. 129), the City's (Dkt. 41; Dkt. 130), the Investigators' (Dkt. 80; Dkt. 133) and Ms. Lopez's (Dkt. 134) motions to dismiss. For the reasons explained above, Investigator DiCiolla, Marley, Maicke, and McDonald's motion to dismiss is granted as to Defendants Maicke and McDonald and denied as to Defendants Marley and DiCiolla. The dismissal of Defendants Maicke and McDonald is without prejudice. The remaining Defendants' motions to dismiss is granted as to Count II and denied as to the remaining counts. Accordingly, the stay of discovery (Dkt. 96) is lifted.

SO ORDERED in No. 19-cv-08254.

Date: March 31, 2022

_____

JOHN F. KNESS
United States District Judge