## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS,
## EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW SOPRON,<br>      Plaintiff, | )<br>)<br>) | Case No. 19-cv-08254 |
| v. | )<br>) | |
| SCOTT CASSIDY SCOTT et al.,<br>      Defendants. | )<br>)<br>) | Hon. John F. Kness,<br>District Judge |
| NICHOLAS MORFIN,<br>      Plaintiff, | )<br>)<br>) | Case No. 1:21-cv-05525 |
| v. | )<br>) | |
| SCOTT CASSIDY SCOTT et al.,<br>      Defendants. | )<br>)<br>) | Hon. John F. Kness,<br>District Judge |
| WAYNE ANTUSAS,<br>      Plaintiff, | )<br>)<br>) | Case No. 1:22-cv-00320 |
| v. | )<br>) | |
| SCOTT CASSIDY SCOTT et al.,<br>      Defendants. | )<br>)<br>) | Hon. John F. Kness,<br>District Judge |

## DEFENDANT CITY OF CHICAGO'S OPPOSED MOTION TO BIFURCATE PLAINTIFFS ANTUSAS, MORFIN AND SOPRON'S *MONELL* CLAIMS AND TO STAY DISCOVERY AND TRIAL ON THOSE CLAIMS

Defendant City of Chicago (the "City"), by and through its undersigned counsel, hereby moves this Court pursuant to Federal Rules of Civil Procedure 42(b) and 26(d) to bifurcate Plaintiffs Wayne Antusas', Nicholas Morfin's, and Matthew Sopron's *Monell* claims against the City and stay discovery and trial on those claims. In support of its motion, the City states as follows:

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

STANDARD OF LAW ........................................................................................................ 6

ARGUMENT ...................................................................................................................... 6

   I.   A COMBINED TRIAL WOULD UNFAIRLY PREJUDICE BOTH THE CITY AND THE INDIVIDUAL CITY DEFENDANTS. ................................................................... 7

   II.   JUDICIAL ECONOMY FAVORS BIFURCATION AND A STAY OF *MONELL* DISCOVERY ............................................................................................................... 10

      A.   A finding of Individual City Defendant liability is a necessary predicate for a finding of Monell liability against the City. ........................................................................... 13

      B.   The *Monell* claims in these cases will be lengthy and costly as the claims are vast and far-reaching with broad implications. .................................................................... 15

   III.   BIFURCATION WOULD NOT RESULT IN A SEVENTH AMENDMENT VIOLATION OR PREJUDICE TO PLAINTIFFS WHERE THE CITY IS WILLING TO SUBMIT A LIMITED CONSENT AGREEMENT IF ANY INDIVIDUAL CITY DEFENDNAT IS FOUND LIABLE FOR VIOLATING PLAINTIFFS' CONSTITUTIONAL RIGHTS. ....................................................................................................................... 22

CONCLUSION ................................................................................................................ 25

## TABLE OF AUTHORITIES

**Supreme Courts**
*Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1987)............... 2
*Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)............................................................ 10
**Appellate Courts**
*Burks v. Raemisch*, 555 F. 3d 592, 596 (7th Cir. 2009)................................................................ 10
*Chlopek v. Fed. Ins. Co*., 499 F. 3d 692, 700 (7th Cir. 2007)................................................... 6, 11
*Edwards v Jolliff-Blake*, 907 F. 3d 1052, 1062 (7th Cir. 2018).................................................... 22
*EG Milestone v. City of Monroe, Wis.*, 665 F. 3d 774, 780 (7th Cir. 2011) ................................ 10
*Houseman v. U.S. Aviation Underwriters*, 171 F. 3d 1117, 1121 (7th Cir. 1999)................... 6, 22
*Krocka v. City of Chicago*, 203 F. 3d 507, 516 (7th Cir. 2000)...................................................... 6
*Lewis v. City of Chicago*, 496 F. 3d 645, 656 (7th Cir. 2007) ....................................................... 9
*Matter of Rhone-Poulenc Rorer, Inc.*, 51 F. 3d 1293, 1303 (7th Cir. 1995) ............................... 22
*Sallenger v. City of Springfield*, 630 F. 3d 499, 504 (7th Cir. 2010)........................................... 14
*Spanish Action Committee of Chicago v. City of Chicago*, 766 F. 2d 315, 321 (7th Cir. 1985) .. 23
*Swanigan v. City of Chicago*, 775 F. 3d 953, 962 (7th Cir. 2015) ............................................... 17
*Thomas v. Cook County Sheriff's Dep't*, 604 F. 3d 293, 305 (7th Cir. 2010) ................. 13, 15, 21
*Treece v. Hochstetler*, 213 F. 3d 360, 364 (7th Cir. 2000) .................................................... 13, 17
*Tsech v. County of Green Lake*, 157 F. 3d 465, 477 (7th Cir. 1998)............................................ 13
**District Courts**
*Adams v. City of Chicago*, 2012 WL 13060050 (N.D. Ill. 2012) ................................................. 12
*Almaraz v. Haleas*, 602 F. Supp. 2d 920, 926 (N.D. Ill. 2008) ................................................... 23
*Almodovar v. Guevara*, Case No. 18-CV-2341, at *2 (N.D. Ill. 2018) ......................................... 5
*Archie v. City of Chicago*, No. 19 C 4838, Dkt. # 179 (N.D. Ill. 2021) ...................................... 12
*Arrington v. City of Chicago*, 2018 WL 3861552, at *1 (N.D. Ill. 2018).................................... 11
*Awalt v. Marketti*, 75 F. Supp. 3d 777, 781 (N.D. Ill. 2014) ................................................... 7, 8
*Blackmon v. City of Chicago,* 2020 WL 1888913, at *4 (N.D. Ill. 2020) .................................... 12
*Bradford, v. City of Chicago*, 2019 WL 5208852, at *2 (N.D. Ill. 2019).......................... 5, 7, 10
*Carr v. City of North Chicago*, 908 F. Supp. 2d 926 (N.D. Ill. 2012)............................. 12, 15, 22
*Clarett v. Suroviak,* 2011 WL 37838 (N.D. Ill. 2011) ................................................................ 11
*Claxton v. City of Chicago*, 2015 WL 5304630, at *1 (N.D. Ill. 2015)......................................... 5
*Elrod v. City of Chicago*, 2007 WL 3241352 (N.D. Ill. 2007) .................................................... 12
*Estate of Heenan v. City of Madison*, 111 F. Supp. 3d 929 (W.D. Wis. 2015) ............................ 8
*Ezell v. City of Chicago*, 2019 WL 3776616, at *6 (N.D. Ill. 2019) ........................................... 11
*Fuery v. City of Chicago*, 2015 WL 715281, at *3 (N.D. Ill. 2015).............................................. 9
*Fulton v. Foley*, 2018 WL 11199088 (N.D. Ill. 2018).................................................................. 11
*Harris v. City of Chicago,* 2016 WL 3261522, at *3 (N.D. Ill. 2016)........................................... 11
*Hood v. City of Chicago et al.,* 2023 WL 184239, at *6 (N.D. Ill. 2023) ...................................... 9
*Horton v. City of Chicago*, 2016 WL 316878, at *2 (N.D. Ill. 2016)............................................ 6
*James v. City of Chicago,* 2022 WL 2952779, at *1 (N.D. Ill. 2022) .......................................... 12
*Jones v. City of Chicago,* 1999 WL 160228, at *3 (N.D. Ill. 1999) ...................................... 12, 15
*Lindsey v. Orlando,* 232 F. Supp.3d 1027, 1035-37 (N.D. Ill. 2017).................................... 11, 24
*Lopez v. City of Chicago*, 2002 WL 335346 at *2 (N.D. Ill. 2002)......................................... 7, 12
*Medina v. City of Chicago*, 100 F. Supp. 2d 893, 895 (N.D. Ill. 2000)................. 5, 8, 16, 23, 24
*Mendez v. City of Chicago*, 2020 WL 147908, *3 (N.D. Ill. 2020) ............................................... 6

*Moore v. City of Chicago,* 2007 WL 3037121, at *9 (N.D. Ill. 2007).......................................... 12

*Myatt v. City of Chicago,* 816 F. Supp. 1259 (N.D. Ill. 1992)...................................................... 15

*Nash v. County of Will*, 2008 WL 4951245 (N.D. Ill. 2008) ......................................................... 12

*Ojeda-Beltran v. Lucio*, 2008 WL 2782815, at *3 (N.D. Ill. 2008) ........................................ 7, 12

*Parker v. Banner*, 479 F. Supp. 2d 827 (N.D. Ill. 2007) .......................................................... 12, 16

*Petropoulos v. City of Chicago*, 2021 WL 1103480, at *9 (N.D. Ill. 2021)................................. 14

*Psarologos v. City of Chicago,* 2020 WL 919215 (N.D. Ill. 2019)................................................. 5

*Saunders v. City of Chicago*, 146 F. Supp. 3d 957, 968 (N.D. Ill. 2015) ........................... 5, 17, 21

*Savory v. Cannon*, 2022 WL 767169, at *6 (N.D. Ill. 2022).................................... 12, 20, 21

*Tanner v. City of Waukegan*, 2011 WL 686867, at *10 (N.D. Ill. 2011) ...................................... 8

*Tate v. City of Chicago,* 2021 WL 4400982, at *1 (N.D. Ill., 2021) ........................................... 12

*Taylor v. Kachiroubas*, 2013 WL 6050492, at *3-4 (N.D.Ill., 2013) .......................................... 11

*Treadwell v. Salgado,* 2022 WL 267988 *5 (N.D. Ill 2022) ........................................ 9, 12, 14, 22

*Veal v. Kachiroubas*, 2014 WL 321708, at *3 (N.D. Ill. 2014)................................................... 5, 8

*Washington v. City of Chicago et al.,* 2023 WL 184239, at *6 (N.D. Ill. 2023) ............... 9, 13, 22

*Williams v. City of Chicago,* 315 F. Supp. 3d 1060, 1083 (N.D. Ill. 2018)................................. 11

**Statutes**

42 U.S.C. §1983............................................................................................................................ 2, 7

735 ILCS 10/9-102 ......................................................................................................................... 23

**Rules**

Fed. R. Civ. P. 1............................................................................................................................... 25

Fed. R. Civ. P. 26(d) ......................................................................................................................... 5

Fed. R. Civ. P. 42(b) ..................................................................................................................... 6, 22

## INTRODUCTION

The *Monell* policy claims against the City should be bifurcated from the claims against Individual City Defendants because a joint trial provides Plaintiffs with no additional relief and instead, poses a significant risk of unfair prejudice and potentially unnecessary delays and costs. Plaintiffs Wayne Antusas, Nicholas Morfin and Matthew Sopron (hereafter collectively referred to as "Plaintiffs"), are seeking money damages for alleged constitutional violations which they assert resulted in their convictions for the 1995 murders of Helena Martin and Carrie Hovel. Based on Plaintiffs' broad *Monell* claims, coupled with their requests for nearly 30 years' worth of documents from the Chicago Police Department, it is clear Plaintiffs intend on using their *Monell* claims to seek discovery on dozens of unrelated matters. This will add substantial costs, time, and confusion to the discovery and trial process. Additionally, it will cause unfair prejudice to the City and Individual City Defendants. Therefore, bifurcation of the *Monell* claims is warranted.

### *Background*

On December 14, 1995, two thirteen-year-old girls, Helena Martin and Carrie Hovel, were killed by gunfire while they sat in a van in the Hale Park neighborhood of Chicago. (Antusas Compl. ¶¶ 1-11).[1] Friends Billy Bigeck, Eric Anderson and Eddie Morfin had approached the van with weapons and Anderson had fired a stolen gun, fatally shooting Martin and Hovel. *Id.* The three were arrested that same evening. *Id.* Plaintiffs Matthew Sopron, Nicholas Morfin and Wayne Antusas were later arrested for helping to plan and orchestrate the murders. (Antusas Compl. ¶¶ 11-57). All three Plaintiffs were convicted of the murders and all three ultimately had their convictions vacated and cases dismissed by the Cook County State's Attorney's office.

---

[1] While this is a joint motion filed in all three cases, some citations will be made with reference only to the Antusas complaint for clarity and ease of reference, as it is the most recent complaint to have been filed and the alleged facts are nearly identical across all three complaints.

Plaintiff Matthew Sopron filed his first amended complaint pursuant to 42 U.S.C. §1983 and state law on November 2, 2021. Plaintiff Nicholas Morfin filed his complaint on October 18, 2021, and Plaintiff Wayne Antusas filed his complaint on January 19, 2022. The three complaints assert essentially identical claims of constitutional and statutory violations with slight variations.[2]

### *Plaintiffs' Complaints*

Plaintiffs allege that their convictions were based on testimony from several witnesses who falsely implicated Plaintiffs because they were coerced. (Morfin Compl. ¶¶ 35-61; Antusas Compl. ¶¶12-47; Sopron Compl. ¶¶ 20-67). The allegations against the Individual City Defendants are almost entirely limited to an alleged meeting the officers attended with County Defendants wherein County Defendants supposedly told the Individual City Defendants about the coercion and an alleged conspiracy was hatched. (Antusas Compl. ¶45-46; Sopron Compl. ¶54-55; Morfin Compl. ¶63-64). In all three complaints County Defendants well outnumber Individual City Defendants. Similarly, the vast majority of the allegations in all three complaints are against County Defendants. It is alleged that Plaintiffs became suspects after prosecutor Scott Cassidy became "fixated on [Morfin], Matt Sopron, and Wayne Antusas." (Morfin Compl. ¶ 44; *accord* Antusas Compl. ¶ 24; Sopron Compl. ¶ 36). The focus of the complaints is on Defendant Cassidy and the Defendant State's Attorney's Investigators and how these County Defendants allegedly coerced witnesses to implicate the plaintiffs. (Antusas Compl. ¶ 24-44).

Nevertheless, Plaintiffs seek to hold only the City liable pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1987), for various allegations of constitutional deprivations. Plaintiffs' wide-ranging *Monell* claims are primarily listed in Count

---

[2] In this Court's order coordinating Plaintiffs' cases it observed that "All three cases arrive from the investigation and prosecutions of the same crime and each plaintiff alleges the same legal theories against the same categories of defendants." *Sopron v. Cassidy,* 19 CV 8254, Dkt. #172 p. 2. The Court further set out a chart that demonstrates an almost complete overlap in defendants. *Id.* p. 3.

Five of their complaints and are also referenced in Counts 2-4 of their complaints. (Antusas Compl. ¶¶ 79, 81, 83-85, 89-91, 93, 95-97; Sopron Compl. ¶¶ 122, 128, 135; Morfin Compl. ¶¶ 117, 123, 130). In Count Five of their complaints, Plaintiffs allege that their injuries were the result of various policies, practices, and customs of the City. Plaintiffs make broad and expansive claims of constitutional violations against the City, notwithstanding that the alleged facts in their complaints almost entirely focus blame on the County Defendants. Count Five sets out the following sweeping *Monell* claims against the City:

> Plaintiff's injuries were caused by the express policies, absence of needed express policies, and widespread practices and customs of the City of Chicago, as well as by the actions of policymaking officials for the City of Chicago…the [City] failed to promulgate proper or adequate rules, regulations, policies, and procedures for: the conduct of interrogations…the collection, documentation, preservation, testing, and disclosure of evidence; writing of police reports and taking of investigative notes; obtaining statements and testimony from witnesses; and maintenance of investigative files and disclosure of those files in criminal proceedings…the City of Chicago failed to promulgate proper and adequate rules, regulations, policies, and procedures for the training and supervision of officers…City of Chicago had notice of a widespread practice and custom by officers…under which individuals questioned regarding criminal activity…were routinely coerced against their will to involuntarily falsely implicate others in crimes…

> [T]here existed a widespread practice and custom among officers, employees, and agents of the City of Chicago, under which witnesses were coerced to falsely implicate others by various means, including but not limited to one or more of the following: (1) individuals were subjected to unreasonably long and uninterrupted interrogations…(2) individuals were subjected to actual and threatened physical or psychological violence; (3) individuals were interrogated at length without proper protection of their constitutional right to remain silent; (4) individuals were forced to sign or assent to oral and written statements fabricated by the police; (5) officers and employees were permitted to lead or participate in interrogations without proper training and without knowledge of the safeguards necessary to ensure that individuals were not subjected to abusive conditions and did not confess involuntarily and/or falsely; and (6) supervisors with knowledge of permissible and impermissible interrogation techniques did not properly supervise or discipline police officers and employees such that the coercive interrogations continued unchecked…

> City of Chicago had notice of widespread practices by officers and agents…which included one or more of the following: (1) officers did not record investigative information in police reports, did not maintain proper investigative files, and/or did not disclose investigative materials to prosecutors and criminal defendants; (2) officers

falsified statements and testimony of witnesses; (3) officers fabricated police reports and other false evidence implicating criminal defendants in criminal conduct; (4) officers failed to maintain and/or preserve evidence and/or destroyed evidence; (5) pursued wrongful convictions through profoundly flawed investigations; and/or officers failed to document misconduct by fellow officers and would instead turn a "blind eye" to the misconduct…

[P]olicymakers of the City of Chicago directly encouraged and were thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and control their officers, agents, and employees…The above widespread practices and customs, so well settled as to constitute de facto policies of the City of Chicago…the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with final policymaking authority for the City…Plaintiff's injuries were directly and proximately caused by officers, agents, and employees of the City of Chicago…

(Antusas Compl. ¶¶ 126-138. *See* Sopron Compl. ¶¶ 138-148; *See* Morfin Compl. ¶¶ 128-138). The *vast* majority of these *Monell* allegations have no connection to the allegations made against the Individual City Defendant Officers in Plaintiffs' complaints.

### *Plaintiffs' Monell Discovery Requests*

As fact discovery is beginning to progress, the City has received broad and expansive discovery requests from the three Plaintiffs in their first set of interrogatories and requests for production. Given the scope of these cases as delineated in the three complaints, these initial requests are just the beginning of what will prove to be a lengthy discovery process. In its response to the first set of written discovery, the City has already made various objections for unduly burdensome, irrelevant and broad requests. In addition to written discovery, it is fair to assume based on the scope of Plaintiffs' complaints that litigation of the *Monell* claims will also include numerous expert reports and depositions elicited from police practice experts and false statement experts. And because there are *three* Plaintiffs, each with various individual defendants, some overlapping some not, and the City will be responsible for juggling *Monell* discovery and fact discovery, a failure to bifurcate will result in potentially unnecessary costs and discovery delays.

This is because a plaintiff's failure to prove that he suffered a constitutional injury at the hands of an individual employee typically is fatal to his *Monell* claim against the municipality.[3] Here, where the majority of the *Monell* claims have no connection to the allegations made against Individual City Defendants, and where the allegations specifically lodged against Individual City Defendants are scant, skeletally pled and secondary to those made against County Defendants, lengthy discovery and litigation on the *Monell* claims would not further the goals of judicial economy. There is significant doubt of the relevancy of such vast and expansive *Monell* claims in litigation that focuses its attention on the County Defendants, given that in these cases, there cannot be *Monell* liability in the absence of Individual Defendant liability.

Courts grant motions to bifurcate and stay discovery on *Monell* claims, recognizing that claims of municipal liability require an extensive amount of work, including expert discovery, that may ultimately be for naught because in "many if not most cases, disposition of the individual claims will either legally or practically end the litigation." *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 895 (N.D. Ill. 2000). In the alternative to a stay of *Monell* discovery and bifurcation of *Monell* claims at trial, the City requests a stay of *Monell* discovery until discovery on the claims against the Individual City Defendants is completed and summary judgment has been filed and decided.[4] In sum, the City moves to bifurcate Plaintiffs' *Monell* allegations, stay all *Monell*

---

[3] *Bradford*, *v. City of Chicago*, 2019 WL 5208852, at *2 (N.D. Ill. 2019); *Claxton v. City of Chicago*, 2015 WL 5304630, at *1 (N.D. Ill. 2015) ("The alleged harm to Plaintiff was not caused independently by these alleged City policies but rather through the Officer Defendants' actions, and thus the Officer Defendants must first be found liable before the City may be held liable on Plaintiff's *Monell* claim."); *Veal v. Kachiroubas*, 2014 WL 321708, at *3 (N.D. Ill. 2014) (municipal liability in case alleging falsification of evidence depends on establishing individual defendant officers violated plaintiff's civil rights).

[4] Federal Rule of Civil Procedure 26(d) permits the court to stay *Monell* discovery until the resolution of non-*Monell* allegations. Fed. R. Civ. P. 26(d); *see also Horton v. City of Chicago*, 2016 WL 316878, at *2 (N.D. Ill. 2016); *Saunders v. City of Chicago*, 146 F. Supp. 3d 957, 968 (N.D. Ill. 2015); *Psarologos v. City of Chicago,* 2020 WL 919215 (N.D. Ill. 2019) (holding that discovery on *Monell* should be stayed until discovery on the claims against the individual defendants is completed and any summary judgment motions

discovery, and enter the City's limited consent to liability for compensatory damages (hereinafter "Limited Consent").

## STANDARD OF LAW

Federal Rule of Civil Procedure 42(b) provides, in relevant part, that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). The Seventh Circuit has emphasized that only one of the above criteria – prejudice or judicial economy – needs to be satisfied for a court to grant bifurcation. *Chlopek v. Fed. Ins. Co.,* 499 F. 3d 692, 700 (7th Cir. 2007); *Horton*, 2016 WL 316878, at *2. After concluding that bifurcation is appropriate under Rule 42, a court must then determine whether it would unfairly prejudice the non-moving party or violate the Seventh Amendment. *Houseman v. U.S. Aviation Underwriters*, 171 F. 3d 1117, 1121 (7th Cir. 1999). The district court has considerable discretion in deciding whether to bifurcate claims. *Krocka v. City of Chicago*, 203 F. 3d 507, 516 (7th Cir. 2000). The determination of whether the court should bifurcate a *Monell* claim "is made on a case-by-case basis, looking at the specific facts and claims presented." *Mendez v. City of Chicago,* 2020 WL 147908, *3 (N.D. Ill. 2020).

## ARGUMENT

Bifurcation of Plaintiffs' *Monell* claims and a stay of *Monell* discovery is essential to avoid subjecting the City and Individual City Defendants to undue prejudice, while also best serving Rule 42's interests of convenience and judicial economy. Further, the City's Limited Consent ensures that Plaintiffs, if successful, will obtain the full measure of their damages. Accordingly,

---

are decided); *Almodovar v. Guevara*, Case No. 18-CV-2341, at *2 (N.D. Ill. 2018) (holding that the discovery process will be more efficient and manageable if the first phase focuses on the alleged constitutional violations and the second phase focuses on *Monell* claims if applicable).

bifurcation and a stay of *Monell* discovery accommodates the interests of all parties in this action.

## I.   A COMBINED TRIAL WOULD UNFAIRLY PREJUDICE BOTH THE CITY AND THE INDIVIDUAL CITY DEFENDANTS.

The unacceptably high risk of prejudice to the City and Individual City Defendants is alone an important basis for bifurcation of the *Monell* claims. *See Bradford v. City of Chicago*, 2019 WL 5208852, at *3 (N.D. Ill. 2019) ("Bifurcation may be proper solely because a joint trial would be prejudicial to the moving party."); *Awalt v. Marketti*, 75 F. Supp. 3d 777, 781 (N.D. Ill. 2014) (court bifurcated *Monell* claim "to avoid an undue risk of unfair prejudice"). A single trial combining Plaintiffs' claims of liability against Individual City Defendants and the City would severely undermine the opportunity for a fair trial and unduly prejudice all Defendants involved.

***Individual City Defendants.*** A significant portion of a combined trial would concern City officials, policymakers, and decades of conduct unrelated to the Individual City Defendants' conduct during their investigation of the Martin and Hovel murders. As discussed in the Introduction, Plaintiffs' *Monell* claims are unworkably broad and concern a host of issues unrelated to the § 1983 claims against Individual City Defendants, including police investigative practices, document management, witness lineup administration, compensation, disciplinary procedures, and training. Conversely, the claims against Individual City Defendants are limited to how statements were obtained from three witnesses during a single murder investigation. (Antusas Compl. ¶¶ 46, 53; Sopron Compl. ¶¶ 54-55, 66; Morfin Compl. ¶¶ 63-69).

As such, there is a real danger that evidence of the City's alleged wrongdoing would "contaminate the mind of the finder of fact," and result in liability by association alone. *See Ojeda-Beltran v. Lucio*, 2008 WL 2782815, at *3 (N.D. Ill. 2008); *Lopez v. City of Chicago*, 2002 WL 335346 at *2 (N.D. Ill. 2002) ("Without bifurcation, the jury would likely hear evidence against the City of various acts of alleged police misconduct committed by numerous non-party

officers to establish a policy or practice. Such evidence can be prejudicial to the individual defendants."); *Medina,* 100 F. Supp. 2d at 895.

As indicated by Plaintiffs' Complaints and discovery requests, Plaintiffs will seek to introduce evidence regarding alleged acts of misconduct by non-party officers over multiple decades to prove their *Monell* claims. As one court in this district put it, "Presenting evidence to the jury regarding a village-wide policy, practice or custom involving multiple improper police actions poses a danger of undue prejudice to the Defendant Officers by creating the perception that the police department routinely acts improperly even if the [individuals] acted properly in this case." *Veal,* 2014 WL 321708, at *6; *see also Tanner v. City of Waukegan,* 2011 WL 686867, at *10 (N.D. Ill. 2011) ("If admitted as part of his case against the City, such evidence could prejudice the individual defendants' ability to distinguish their own actions from those of other non-party officers.").

Further, to the extent that the evidence offered in any combined trial were to concern other acts of the Individual Defendants themselves, that too is problematic. *See Awalt,* 75 F. Supp. 3d at 780 (granting motion to bifurcate because evidence of other acts was prejudicial to the individual defendants on the claims against them). In this case, Plaintiffs are seeking the disciplinary history of Individual City Defendants, which raises the concerns addressed in *Estate of Heenan v. City of Madison,* where the court held bifurcation was warranted where evidence of the defendant officer's disciplinary history, used to prove the allegation that the city failed to supervise him, was irrelevant to claims against the individual officer and would likely have prejudiced him at trial. *Estate of Heenan v. City of Madison*, 111 F. Supp. 3d 929 (W.D. Wis. 2015).

The presentation at trial of broad *Monell* evidence involving non-party officers and City officials for matters wholly unrelated to Plaintiffs' underlying claims would prejudice the

Individual City Defendants and confuse the jurors, who should be judging Individual City Defendants based on their actions alone. If the underlying claims were tried with the *Monell* claims, the jury could render a verdict based on an alleged history of misconduct in the Chicago Police Department, and not based on the facts of the underlying investigation. The risk of such erroneous conclusions completely undermines the ability of Individual City Defendants to have a fair trial. *See Fuery v. City of Chicago*, 2015 WL 715281, at *3 (N.D. Ill. 2015) ("*Monell* evidence will draw the jury's attention away from resolving the underlying issues of an incident that occurred over seven years ago. Injecting the *Monell* issues into the trial will make the case more complicated and potentially cause juror confusion.").

     ***City of Chicago***. Likewise, the City will be unfairly prejudiced if all the Plaintiffs' claims were to be tried in a single trial. *Monell* provides Plaintiffs with a vehicle to hold a municipality liable for its own conduct; it is not a means by which to hold a municipality vicariously liable or liable under a *respondeat superior* theory. *Treadwell v. Salgado,* 2022 WL 267988 *5 (N.D. Ill 2022) (Kendall, J.) (granting City's motion to bifurcate *Monell* claims); *Lewis v. City of Chicago*, 496 F. 3d 645, 656 (7th Cir. 2007).

     In the recently decided consolidated cases of *Washington v. City of Chicago et al.* and *Hood v. City of Chicago et al.,* which like the instant cases, are separate actions arising out of the same incident and subject matter, the Court held that the risk of unfair prejudice to Defendants justified bifurcation of Plaintiffs' *Monell* claims. 2023 WL 184239, at *6 (N.D. Ill. 2023) (J. Kness). The Court held that it was "possible, perhaps probable, that a jury would, by association, impermissibly tag the Defendant Officers with accountability" for the notorious misconduct of non-party officers. *Id.* The Court noted that the concept of "guilt by association is repugnant to our notion of elemental justice and fair play." *Id.* (internal citation omitted). *See also Bradford v. City of Chicago*, 2019

WL 5208852, at *3 (granting bifurcation to promote judicial economy and where there was a danger *Monell* evidence would result in liability by association).

Here, failure to bifurcate runs a risk that the jury would automatically find the City liable for the *Monell* claims if they found Individual City Defendants liable. Such conclusions have no basis in law since there is no *respondeat superior* doctrine under *Monell*; rather the jury must find direct culpability on the part of the City before it may make a liability finding on a *Monell* claim. *EG Milestone v. City of Monroe, Wis.*, 665 F. 3d 774, 780 (7th Cir. 2011) ("There is no *respondeat superior* liability under Section 1983; the Supreme Court 'distinguish[es] acts of the *municipality* from acts of the *employees* of the municipality.'") (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). This risk of confusion is particularly acute here, where most of Plaintiffs' allegations are against County prosecutors and not City employees. If a jury finds that the County Defendants are liable, it may wrongly impute such a finding against the City on the *Monell* claims.

A jury considering specific conduct and policy evidence may conflate the two or misconstrue the complicated law surrounding *Monell*. The claims against Individual City Defendants and County defendants are fact-specific and confined to a discrete and limited timeframe, whereas the claims against the City are highly-complex, intricate, and far-ranging in time. The hallmark of a § 1983 claim is that a defendant is liable "for their own misdeeds, but not for anyone else's." *Burks v. Raemisch*, 555 F. 3d 592, 596 (7th Cir. 2009). To assure a fair trial is preserved and prejudice is avoided for both Individual City Defendants and the City, bifurcation is appropriate in these three cases.

## II.     JUDICIAL ECONOMY FAVORS BIFURCATION AND A STAY OF *MONELL* DISCOVERY.

In these three related cases, bifurcation and a stay of *Monell* discovery would serve the goals of judicial economy by conserving potentially needless time and resources, which is a

sufficient basis on its own to grant bifurcation. *Chlopek,* 499 F. 3d at 700. Courts in this district frequently grant bifurcation in cases like these, finding that bifurcation can bring about an earlier disposition of the suit by allowing a bypass of discovery relating to the *Monell* claims, which add significant and possibly unnecessary time, effort, cost, and complication to the discovery process. *See Ezell v. City of Chicago*, 2019 WL 3776616, at *6 (N.D. Ill. 2019) ("Allowing discovery— much less the presentation of evidence at trial—into Plaintiffs' broad *Monell* allegations will unquestionably complicate matters further and exponentially increase the cost to the parties and burden on the Court, not to mention require Plaintiffs to wait years longer than is necessary to resolve their claims for compensatory damages."); *Williams v. City of Chicago,* 315 F. Supp. 3d 1060, 1083 (N.D. Ill. 2018) ("[F]irst addressing the individual claims may eliminate the need to proceed to the *Monell* claims at all, and bifurcation may also significantly expedite litigation of the individual claims themselves"); *Arrington v. City of Chicago*, 2018 WL 3861552, at *1 (N.D. Ill. 2018) ("[J]udicial economy weighs in favor of bifurcation. It is clear that the *Monell* claims require significant discovery that is not relevant to the claims against [the defendant officer]."); *Lindsey v. Orlando,* 232 F. Supp.3d 1027, 1035-37 (N.D. Ill. 2017) (motions to bifurcate *Monell* claims have become routine); *Harris v. City of Chicago,* 2016 WL 3261522, at *3 (N.D. Ill. 2016) (finding the alleged *de facto* policies regarding fabricating evidence, failure to train, and code of silence depended on the individual officers' actions); *Taylor v. Kachiroubas*, 2013 WL 6050492, at *3-4 (N.D.Ill., 2013) (granting bifurcation where the plaintiffs alleged the defendant officers coerced their confessions and fabricated and withheld evidence); *Clarett v. Suroviak,* 2011 WL 37838 (N.D. Ill. 2011) (in suit alleging false arrest and unreasonable seizure, stay of *Monell* claims granted where liability of individual defendants needed to be determined first); *Fulton v. Foley*, 2018 WL 11199088 (N.D. Ill. 2018); *Ojeda–Beltran v. Lucio,* 2008 WL 2782815, at *2 (N.D. Ill.

2008) (noting that litigating plaintiffs' *Monell* claim will be a "more burdensome and time-consuming task" than litigating plaintiffs' claims against the individual officer defendant); *Adams v. City of Chicago*, 2012 WL 13060050 (N.D. Ill. 2012); *Carr v. City of North Chicago*, 908 F. Supp. 2d 926 (N.D. Ill. 2012); *Nash v. County of Will*, 2008 WL 4951245 (N.D. Ill. 2008); *Moore v. City of Chicago,* 2007 WL 3037121, at *9 (N.D. Ill. 2007); *Parker v. Banner*, 479 F. Supp. 2d 827 (N.D. Ill. 2007); *Elrod v. City of Chicago*, 2007 WL 3241352 (N.D. Ill. 2007); *Lopez v. City of Chicago,* 2002 WL 335346 (N.D. Ill. 2002); *Jones v. City of Chicago,* 1999 WL 160228, at *3 (N.D. Ill. 1999).

The court in *James v. City of Chicago* highlighted that at least four courts in this district have recently bifurcated *Monell* discovery in similar circumstances. 2022 WL 2952779, at *1 (N.D. Ill. 2022) (affirmed the granting of the defendant's motion to bifurcate *Monell* claims). *See Savory v. Cannon*, 2022 WL 767169, at *6 (N.D. Ill. 2022); *Treadwell v. Salgado*, 2022 WL 267988, at *2 (N.D. Ill. 2022); *Tate v. City of Chicago,* 2021 WL 4400982, at *1 (N.D. Ill., 2021) (it is efficient to bifurcate the case and determine "whether the actions of the individual officers rise to a constitutional violation before ordering what is inevitably extensive and expensive discovery into the City's policies and practices."); *Archie v. City of Chicago*, No. 19 C 4838, Dkt. # 179 (N.D. Ill. 2021); *Blackmon v. City of Chicago,* 2020 WL 1888913, at *4 (N.D. Ill. 2020) (granting bifurcation where "Blackmon alleges six *de facto* policies, practices and customs that caused him injury, as well as a failure to properly train, supervise, or discipline the Officer Defendants . . . Based on the nature of these alleged constitutional violations, it is clear the City's potential *Monell* liability is contingent on the officers' liability for the underlying misconduct.").

Here, judicial economy is served through bifurcation where: a finding of liability against Individual City Defendants is a necessary predicate for a finding of *Monell* liability against the

12

City; the expansive *Monell* claims are largely unrelated to the claims against the individual officers; there are scant factual allegations against the individual officers and it is the County Defendants who are at the center of the litigation; and the *Monell* claims are not at the forefront of Plaintiffs' complaints and would ostensibly be the most difficult to prove. Thus, it is prudent to wait for a determination of the claims against the Individual City Defendants before completing discovery and litigating the *Monell* claims.

### A. A finding of Individual City Defendant liability is a necessary predicate for a finding of Monell liability against the City.

The Seventh Circuit has made clear that "a city's liability is derivative of its police officer's liability," because "a municipality's liability for a constitutional injury 'requires a finding that the individual officers are liable on the underlying substantive claim.'" *Treece v. Hochstetler*, 213 F. 3d 360, 364 (7th Cir. 2000) (citing *Tsech v. County of Green Lake*, 157 F. 3d 465, 477 (7th Cir. 1998). Although it may be true that "a municipality can be held liable under *Monell*, even when its officers are not," this narrow exception can only occur where "such a finding would create an *inconsistent* verdict." *Thomas v. Cook County Sheriff's Dep't*, 604 F. 3d 293, 305 (7th Cir. 2010). To determine whether *Monell* liability against a municipality could create an inconsistent verdict, the Court "must look to the nature of the constitutional violation, the theory of municipal liability and the defenses set forth." *Id.* at 305.

The narrow exception outlined in *Thomas* does not apply here.[5] The majority of Plaintiffs' *Monell* allegations involve failure to train, supervise, or discipline officers with respect to, among other things, their conduct during interrogations, the collection of evidence, and

---

[5] *See Washington,* 2023 WL 184239, at *7 (N.D. Ill. 2023) (J. Kness) ("[T]he rule of *Thomas* concerned the question of law whether a municipality could ever be held liable under *Monell* when individual defendants were found not liable for the underlying episode—not whether that liability should be established in a single trial or separately.").

obtaining witness statements. (Antusas Compl. ¶¶ 126-138. *See* Sopron Compl. ¶¶ 138-148; Morfin Compl. ¶¶ 128-138). Holding the municipality liable for failure to train, supervise, or discipline officers would generally be inconsistent with a verdict in favor of the individual officers. *See Sallenger v. City of Springfield*, 630 F. 3d 499, 504 (7th Cir. 2010); *Treadwell,* 2022 WL 267988, at *4 (jury must find defendant officers liable before the City may be held liable under *Monell* on grounds of failure to supervise and having a policy or practice of fabricating false evidence, coercing false witness testimony or suppressing exculpatory evidence); *see also Petropoulos v. City of Chicago*, 2021 WL 1103480, at *9 (N.D. Ill. 2021) (dismissing *Monell* claim with prejudice where "Plaintiffs haven't pointed to any specific training failures or a pattern suggesting that the City's failure to train its employees caused their injury.").

Plaintiffs' complaints describe a scenario where County prosecutors and County investigators led allegedly coercive interviews with witnesses. (*See*, *e.g.*, Antusas Compl. ¶24). Neither Plaintiff Antusas nor Sopron allege coercion by any Chicago Police Department officer. Only Plaintiff Morfin alleges that Individual City Defendants played any role in coercing a witness. (Morfin Compl. ¶¶ 35-41). The only allegation against Individual City Defendants in Antusas' and Sopron's complaints are two paragraphs among over 160 paragraphs, putting forth the allegation that after County Defendants had coerced witnesses, they met with Individual City Defendants and "they agreed upon a plan to arrest and falsely charge [Plaintiff] with two counts of murder, despite the fact that there was no probable cause to suspect [Plaintiff] of those crimes." (Antusas Compl. ¶ 45-47; Sopron Compl. ¶ 54-56).

The allegations against Individual City Defendants are dwarfed by the dozens of allegations against County Defendants. (*See, e.g.,* Antusas Compl. ¶24-44; Sopron Compl. ¶36-54; Morfin Compl. ¶45-61). This fact—that the focus of the allegations in the complaints are

against the County Defendants and not the Individual City Defendants—is what distinguishes this case as one particularly appropriate for bifurcation. Litigating the *Monell* claims in tandem with all the other claims against dozens of defendants risks unnecessary delay and expense in the event the claims against Individual City Defendants are dismissed. Without a finding that false witness statements were unconstitutionally coerced by Individual City Defendant Officers, no City policy could have caused the injury. Even if not dismissed, the claims against Individual City Defendants could be significantly narrowed, thereby greatly limiting the breadth of the *Monell* claims.

The *Monell* claims are far more expansive and different than the limited claims against the individual officers. There is little overlap in discovery on the individual claims and the *Monell* claims. *See Jones,* 1999 WL 160228, at *3 (finding little chance of overlap of evidence where evidence required to support plaintiff's *Monell* claims would be "quite broad" while evidence against the defendant officers, limited to the events surrounding plaintiff's arrest, would be straight-forward); *see also Carr,* 908 F. Supp. 2d at 933 (disagreeing with Plaintiff's assertion that questioning of individual officers' actions required comparing their actions to the department's required training and procedures: "much of the *Monell* discovery would not be at all necessary to litigate the claims against Defendant Officers."); *Myatt v. City of Chicago*, 816 F. Supp. 1259 (N.D. Ill. 1992) (bifurcation would further the goal of judicial economy and expediency where evidence for *Monell* claims could be separated from other claims). Based on the constitutional violations Plaintiffs are alleging and the *Monell* theories they are asserting, Plaintiffs' cases do not fit into the limited exception outlined in the *Thomas* case and bifurcation is appropriate.

**B. The *Monell* claims in these cases will be lengthy and costly as the claims are vast and far-reaching with broad implications.**

Plaintiffs' *Monell* claims are broad – ranging from failure to train, to failure to supervise, to failure to implement policies and procedures, to unconstitutional customs and practices for

interrogations and witness interviews – with the blame spread between supervisors to unnamed "final policymakers." (Antusas Compl. ¶¶ 126-138; *see* Sopron Compl. ¶¶ 138-148; Morfin Compl. ¶¶ 128-138). These allegations are unsubstantiated and undoubtedly, the advancement of these claims and the defense of these claims will be lengthy, contested, and costly.

As this Court is aware, *Monell* claims "add significant time, effort, and complications to the discovery process[,]" *Medina*, 100 F. Supp. 2d 893 at 895, and "may inflict needless, wasteful expense of time and money upon the parties and the court." *Parker v. Banner*, 479 F. Supp. 2d 827, 834 (N.D. Ill. 2007). Specifically, the City would have the costly burden of producing documents responsive to the many requests for production by Plaintiffs to litigate their *Monell* claims on top of the expensive and time-consuming endeavor of identifying and prepping its own witnesses and experts in defense of Plaintiffs' *Monell* allegations.

Plaintiffs' broad *Monell* theories would exponentially increase litigation time and cost, particularly because the incident at issue in Plaintiffs' complaints occurred 27 years ago, before most discovery was digitized in a quickly accessible fashion. Additionally, Plaintiffs' discovery requests are voluminous and seek decades of documents, including old Complaint Register files. Bifurcating the *Monell* claims would eliminate the Court's need for: (1) intervening in discovery disputes arising from a *Monell* claim; (2) Rule 30(b)(6) witnesses and/or purported "policymakers" that would be necessary to testify about the various policies, practices, supervision, and training techniques that Plaintiffs allege in their complaints; (3) costly expert discovery necessary for the *Monell* claims; (4) needing to analyze and rule on any motion for summary judgment the City may bring; and (5) presiding over a longer than necessary, more factually and legally complex trial that will could trigger post-trial motions. *See Medina*, 100 F. Supp. 2d 893 at 895 (the "trial of the claims against the individual officers is…likely to be shorter, and perhaps significantly shorter,

than a trial also involving *Monell* claims"). In fact, the Seventh Circuit has explicitly endorsed bifurcation to obviate "the waste of the valuable time and resources of the court." *Treece*, 213 F. 3d at 365; *see also Swanigan v. City of Chicago*, 775 F. 3d 953, 962 (7th Cir. 2015) (concluding there "is no need for the parties to spend time and money litigating a *Monell* claim" where the plaintiff seeks only compensatory damages and the municipal entity is willing to indemnify the individual employees and pay attorney's fees and costs).

To date, each Plaintiff has served his first set of written requests for production and interrogatories.[6] An examination of these first requests illustrates the need for bifurcation. For example, in Interrogatory No. 14, Plaintiffs ask whether the City had a written policy, procedure or training program in place on *nine different subject matters* from 1993-2022, a nearly *thirty-year period*, each covering vast topics such as documenting investigations, interviewing witnesses, identification procedures, the use of informants, disclosure of exculpatory evidence, reporting and investigating officer misconduct, and disciplining officers. (*See* Antusas Interrogatory attached hereto as Exhibit 1, Morfin Interrogatory attached hereto as Exhibit 2, Sopron Interrogatory attached hereto as Exhibit 3.) It also asks the City to identify the policymakers who were responsible for or had final policymaking authority for each of those policies over the nearly thirty-year period. *Id.*

In Interrogatory No. 15, Plaintiffs ask the City to describe *every instance between 1993 and 2003* in which the identified policymaker(s) undertook to review, investigate, analyze, uncover, prevent, or determine the prevalence of any misconduct, deficiency, shortcoming, or other problem relating to any of the policies or procedures identified in Interrogatory No. 14, and, "include what steps, if any, were taken in response to the information obtained through any such inquiry,

---

[6] It is prudent to rule on bifurcation at the outset of discovery. *Saunders v. City of Chicago*, 146 F. Supp. 3d 957, 971 (N.D. Ill. 2015).

investigation, review or analysis, as well as the date such steps were taken." *Id.*

Next, in Interrogatory No. 16 Plaintiffs ask the City to describe *all changes between 1985 and 2005* to the Chicago Police Department's (CPD) policies, practices and training programs relating to any of the nine subject matters enumerated in Interrogatory No. 14. *Id.* It goes on to ask the City to describe how CPD employees "were made aware of the changes identified above, including but not limited to how they were informed of the new policies and the dates on which all steps were taken to inform the officers of the policy change." *Id.* Interrogatory No. 17 asks for each instance between 1991 and 1998 in which *any* CPD Officer received *any* discipline imposed by the City for violating any of the policies and procedures identified in Interrogatory No. 14 and specific, enumerated information about each such instance of discipline. *Id.*

Plaintiffs' First Requests for Production (RFP) are equally far-reaching. For example, in No. 43, Plaintiffs ask the City to produce all documents relating to any procedure of the City of Chicago or the CPD relating to *ten different subjects*, notably without any limitation in time. (*See Antusas RFP, attached hereto as Exhibit 4, Morfin RFP attached hereto as Exhibit 5, Sopron RFP attached hereto as Exhibit 6*). Request No. 44 goes on to ask the City to produce documents identifying "any policymaker who was responsible for or had final policymaking authority for any policy or procedure of the Chicago Police Department between 1993 and 1999 on any of the subjects identified in Request for Production No. 43, above, as well as all Documents relating to any effort of those policymaker(s) to review, investigate, analyze, uncover, prevent, or determine the prevalence of any misconduct, deficiency, shortcoming, or other problem relating to any such policy or procedure." *Id.*

Request No. 45 asks for documents relating to any change made to the procedures identified in Request No. 43, for a *decade,* between 1993-2003. *Id.* Next, Request No. 47 asks for documents

"relating to every instance in which an employee of the Chicago Police Department was subject to *any* form of discipline for failing to follow policies or procedures on *any* of the subjects identified in Request for Production No. 43, above." *Id.* Notably, this request is not limited to the Individual City Defendants, but ***any CPD employee***, with no timeframe established. In request No. 54, the City is asked to produce all documents related to homicide investigation file maintenance from *1983 through 2005*. *Id.* The request "includes each and every unit of the Chicago Police Department in which Documents related to homicide investigations are stored or maintained, including but not limited to Chicago Police Headquarters, the Office of Legal Affairs, the Records Division, Detective Division Areas, Gang Crimes, the Special Operations Section, the Evidence and Recovered Property Section (ERPS), the Chicago Crime Lab, and the Identification Section, as well as any storage warehouses, rooms, repositories, or other areas used by any unit of the Chicago Police Department." *Id.*

The request in No. 55 is no less audacious, asking for documents from the same twenty-two-year period and from the same list of CPD units as Request No. 54, but now seeking "all documents relating to homicide investigations where there was any claim of actual or alleged withholding of exculpatory or impeaching information from a criminal defendant." *Id.* In Request No. 56, Plaintiffs request all documents related to ***any*** allegation of misconduct against ***any police officer*** from 1991-1996 and lawsuits or administrative complaints filed in state or federal courts or agencies alleging police or prosecutorial misconduct. *Id.* Again, the request is not tailored to the Individual City Defendants.

**Reciting these requests individually is important for two reasons.** First, they highlight why staying discovery would further the goal of judicial economy, as contesting the necessity of these discovery requests, let alone identifying and responding to these requests, would result in the

very definition of an undue burden and hardship upon the City. It would require countless man-hours from various understaffed departments of the City and a heavy financial burden to respond to requests for *thousands* of documents spanning *decades* of time and *hundreds* of officers. Even if this Court or Plaintiffs were to pare down the sheer volume of documents requested, the scope of these requests illustrates the tenor of Plaintiffs' complaints and what will be the tenor of litigation of these *Monell* claims.

Reviewing these requests is also insightful as it allows a comparison to what courts in this district have deemed as discovery ripe for bifurcation. In *Savory v. William Cannon, Sr., et al.*, the plaintiff brought a §1983 case against the City of Peoria and a number of its officers alleging, in part, that Peoria's policies, practices, and customs were the underlying cause of his coerced confession and ultimate conviction. 2022 WL 767169 at *1(N.D. Ill. 2022). Savory sought extensive discovery from the City of Peoria, including decades of written policies and procedures of the City and its police department addressing: the documentation of investigations, the collection and preservation of evidence, and the interrogation and interviewing of suspects and witnesses. *Id.* Savory also sought documentation on each policymaker responsible for those policies, each instance in which a policymaker reviewed any of those policies, any steps taken in response to the review, and "any and all changes" made to those policies over a 25-year period and how those changes were conveyed to employees. *Id.* Remarkably, the interrogatory request the *Savory* Court chose to highlight as exemplary of burdensome discovery, which it found sufficiently compelling as to warrant bifurcation **is the exact same request** instant Plaintiffs make here, in Interrogatories No. 14-16 recited above.

The City of Peoria moved to bifurcate the plaintiff's *Monell* claims arguing bifurcation would promote efficiency because discovery on the claims would be far broader and more

burdensome than discovery on the claims against the officer defendants. *Id.* at 2-3. The Court agreed, holding that Savory's "wide-ranging and voluminous" written discovery requests called for the City to produce policies, procedures and practices spanning decades. *Id.* at 3. The Court ruled the prospect of avoiding the burdensome additional discovery weighed in favor of bifurcation, as did the risk faced by defendant officers of unfair prejudice. *Id.* at 5. Notably, the Court also held Savory's case was not like *Thomas v. Cook County Sheriff's Dep't*, and Savory had little chance of prevailing on his *Monell* claims against the City without securing a verdict against a defendant officer. *Id.* at 2-3. Again, the written discovery requests the *Savory* court held leaned toward bifurcation, are the same requests Plaintiffs make in the instant cases.

In *Saunders v. City of Chicago,* the plaintiffs alleged in a §1983 action that their convictions were based on statements that officers obtained through unconstitutional methods. *Saunders,* 146 F. Supp. 3d 957. In support of bifurcation, the City argued the plaintiff had already served them with broad and wide-ranging *Monell* discovery requests and bifurcation would increase judicial economy. *Id.* at 968. The court agreed that bifurcation was appropriate where discovery was not far along, the amount of discovery pertaining to *Monell* claims was vast and would place a considerable burden on the City, and any determination on *Monell* claims should be made after a trial on individual liability. *Id.* at 969-971.

The relevant case law indicates discovery should be stayed on the instant *Monell* claims, and trial on those claims should proceed only where Individual Defendants are found liable. *See, e.g.*, *Edwards v Jolliff-Blake*, 907 F. 3d 1052, 1062 (7th Cir. 2018) (affirming summary judgment on *Monell* claim where claims against individual defendants were dismissed). If Individual City Defendants are found not liable, bifurcation would have saved substantial time, money, and effort,

especially because here, three sets of *Monell* claims could be avoided. Thus, the interests of judicial economy militate strongly in favor of bifurcation.

### III.  BIFURCATION WOULD NOT RESULT IN A SEVENTH AMENDMENT VIOLATION OR PREJUDICE TO PLAINTIFFS WHERE THE CITY IS WILLING TO SUBMIT A LIMITED CONSENT AGREEMENT IF ANY INDIVIDUAL CITY DEFENDNAT IS FOUND LIABILE FOR VIOLATING PLAINTIFFS' CONSTITUTIONAL RIGHTS.

After concluding that bifurcation is appropriate under Rule 42, a court must then determine whether it would unfairly prejudice the non-moving party or would violate the Seventh Amendment. *Houseman*, 171 F. 3d at 1121. The Seventh Amendment of the U.S. Constitution states that no fact tried by a jury shall be otherwise re-examined. A district court accordingly "must not divide issues between separate trials in such a way that the same issue is reexamined by different juries." *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F. 3d 1293, 1303 (7th Cir. 1995). "While both juries can examine overlapping evidence, they may not decide factual issues that are common to both trials and essential to the outcome." *Houseman*, 171 F.3d at 1126.

The Seventh Amendment is not implicated here because as established *supra,* the *Monell* claims are distinct from the claims against the Individual City Defendants. Even if a second trial were necessary, Plaintiffs' claims against the Individual City Defendants and the *Monell* claims against the City "involve different theories of liability. As such, the Seventh Amendment does not preclude bifurcation here." *Treadwell,* 2022 WL 267988, at *8.

Furthermore, bifurcation would not otherwise prejudice Plaintiffs. *See Carr*, 908 F. Supp. 2d at 935 ("bifurcation is not dismissal"); *Washington,* 2023 WL 184239, at *6 (N.D. Ill. 2023) (J. Kness) (noting the issue is whether Plaintiffs' *Monell* claims should be heard by the same jury that hears the claims against the Defendant Officers, not whether the claims should proceed at all: "[Plaintiffs] will still get their day in court on the *Monell* claims."). In fact, Plaintiffs may benefit

from bifurcation because their other claims can proceed more quickly and without the need for costly expert discovery.

Additionally, bifurcation and a stay of Plaintiffs' *Monell* claims would not affect Plaintiffs' recovery of any monetary damages a jury may award at trial. Individual City Defendants acted within the scope of their employment at all relevant times during their encounters with Plaintiffs. Thus, the City has a statutory obligation to indemnify the officers for any compensatory damages awarded against them. *See* 735 ILCS 10/9-102. As such, a finding that the City is liable would not result in any additional compensatory damages for Plaintiffs. *Almaraz v. Haleas*, 602 F. Supp. 2d 920, 926 (N.D. Ill. 2008); *see also Spanish Action Committee of Chicago v. City of Chicago*, 766 F. 2d 315, 321 (7th Cir. 1985).

In the event of bifurcation, should Plaintiffs succeed in establishing that any Individual City Defendant is liable for violating their constitutional rights, the City is willing to agree to the entry of judgment against it requiring indemnification of the Individual Defendant Officer for compensatory damages and reasonable attorneys' fees. (*See* City's Limited Consent to Entry of Judgment, attached hereto as Exhibit 7). This Limited Consent confers a substantial benefit to Plaintiffs, as "the decision of a plaintiff to pursue a *Monell* claim carries with it a heavy burden of…proof." *Medina*, 100 F. Supp. 2d at 894. The Limited Consent allows Plaintiffs to obtain a judgment against the City for all the compensatory damages to which they are entitled so long as they obtain a favorable verdict against the Individual City Defendants, circumventing *Monell* litigation entirely.

This Limited Consent would also allow Plaintiffs to recover if any Individual City Defendant is found to have violated Plaintiffs' constitutional rights but is not liable because of qualified immunity. Therefore, due to the provisions of the Limited Consent, "disposition of the

individual claims will either legally or practically end the litigation…[i]f the plaintiff prevails against the officer on his Section 1983 claim, he is likely not to want or need to proceed any further…Illinois statute directs local governments to pay tort judgments for compensatory damages for which its employees are liable…" *Medina*, 100 F. Supp. 2d at 895. In *Lindsey v. Orlando,* the Court followed a similar roadmap ruling that:

> [i]n a case such as this one, the court believes it is unlikely that the City can be held liable under *Monell* unless the Defendant Officers themselves are found liable. And the City has agreed to entry of judgment against it if the individual officers caused a constitutional injury, regardless of whether the officers are found to have qualified immunity. Under that proposal, the City's liability turns on whether the individual officers violated [Plaintiff's] constitutional rights. If they did, the City will pay the judgment; if they did not, the elements of *Monell* are not met and the case will be over. Plaintiff Lindsey will not be required to litigate the issue of whether the officers made a reasonable mistake, driven by City policy or otherwise, in order to recover for the violation of his rights. Other courts of this district have found this concession weighs in favor of bifurcation.

*Lindsey v. Orlando,* 232 F. Supp. 3d 1027, 1036 (N.D. Ill 2017) (holding stay of *Monell* discovery and bifurcation of trial was warranted). In sum, bifurcation would have no effect on the recovery Plaintiffs seek because if the Individual City Defendants are found to have violated Plaintiffs' constitutional rights, the City's Limited Consent will result in judgment against the City for compensatory damages and reasonable attorneys' fees.

Satisfying *Monell* obligations in this case would require, at a minimum, tracking down the existence and location of thousands of documents from various City agencies, subpoenaing other government agencies such as the Cook County Public Defender's Office for dozens if not hundreds of files, reviewing and redacting those materials, producing those materials as well as producing 30(b)(6) witnesses, holding discovery dispute conferences, identifying and preparing expert witnesses, depositions of those witnesses, filing and defending *Daubert* motions as well as filing and defending summary judgement motions as to the *Monell* claims. And once discovery is complete, a more complex, lengthy, and costly pre-trial period and trial would ensue, all potentially

for naught if the Individual City Defendants are found not liable. Thus, to preserve Fed. R. Civ. P. 1, which imposes a duty on both the Court and the parties to ensure a "just, speedy, and inexpensive determination of every action and proceeding," these cases are ripe for bifurcation.

## CONCLUSION

For the reasons set forth above, Defendant City of Chicago respectfully requests that this Court: (1) grant its motion to bifurcate Plaintiffs Sopron, Morfin and Antusas' *Monell* claims; (2) stay all discovery and trial on the three Plaintiffs' *Monell* claims; and (3) enter the City's proposed Limited Consent to Entry of Judgment against Defendant City of Chicago; and any other relief this Court deems just and reasonable.

Respectfully submitted,

**CITY OF CHICAGO**

By:  */s/ Neha S. Locke*
Special Assistant Corporation Counsel
**Nathan & Kamionski, LLP**
Shneur Nathan
Avi Kamionski
Neha Locke
33 West Monroe, Suite 1830
Chicago, Illinois 60603
(312) 957-6639
nlocke@nklawllp.com

*/s/     Brianna J. Siebken*
Special Assistant Corporation Counsel
**Michael Best & Friedrich, LLP**
James P. Fieweger
Brianna J. Siebken
Carolyn E. Isaac
444 W. Lake, Suite 3200
Chicago, IL 60606

*Attorneys for Defendant City of Chicago*

*Attorneys for Defendant City of Chicago*

### CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on February 9, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which caused it to be served this day on all counsel of record who are registered to receive notices of electronic filing generated by the CM/ECF system.

By:  /s/ Brianna J. Siebken
Brianna J. Siebken
*One of the Attorneys for Defendant*
*City of Chicago*