# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MATTHEW SOPRON,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT CASSIDY *et al.*,<br><br>Defendants. | No. 19-cv-08254<br><br>Judge John F. Kness |
| NICHOLAS MORFIN,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT CASSIDY *et al.*,<br><br>Defendants. | No. 21-cv-05525<br><br>Judge John F. Kness |
| WAYNE ANTUSAS,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT CASSIDY *et al.*,<br><br>Defendants. | No. 22-cv-00320<br><br>Judge John F. Kness |

## MEMORANDUM OPINION AND ORDER[1]

This case arises out of the 1995 murders of two thirteen-year-old girls, Helena Martin and Carrie Hovel, and the ensuing prosecution of Wayne Antusas, Nicholas Morfin, and Matthew Sopron (collectively, "Plaintiffs") for their role in the murders. Plaintiffs spent over twenty years incarcerated for the murders, but all three convictions were eventually vacated, and the cases were dismissed by the Cook County State's Attorney's office. Each of the individual, former Chicago Police Officer Defendants (collectively, "Individual City Defendants") in this case played a role in the investigation that led to Plaintiffs' convictions. After Plaintiffs were released from prison, they brought the present suits[2] against, among others, the City of Chicago (the "City") alleging that the investigation and municipal policies that led to their wrongful convictions were unconstitutionally flawed and justify a significant damages award.

Presently before the Court is the City's joint motion to bifurcate Plaintiffs' *Monell* claim from their claims against the Individual City Defendants, and to stay discovery and trial on Plaintiffs' *Monell* claim. (Dkt. 100.) For the reasons that follow,

---

[1] This case presents very similar bifurcation circumstances as those addressed by the Court in several other cases. *See generally Lyons v. City of Chicago*, No. 20-CV-03412, 2023 WL 2390364 (N.D. Ill. Mar. 7, 2023); *Blassingame v. City of Chicago*, No. 19-CV-07287, 2023 WL 2390363 (N.D. Ill. Mar. 7, 2023); *Washington v. Boudreau*, No. 16-CV-01893, 2023 WL 184239 (N.D. Ill. Jan. 13, 2023). This opinion largely adopt the reasoning and language set forth in the opinions entered in those cases.

[2] Plaintiff Matthew Sopron filed his first amended complaint on November 2, 2021. (*See Sopron v. Cassidy et al.*, No. 19-cv-08254, Dkt. 124.) Plaintiff Nicholas Morfin filed his complaint on October 18, 2021. (*See Morfin v. Cassidy et al.*, No. 21-cv-05525, Dkt. 1.) And Plaintiff Wayne Antusas filed his complaint on January 19, 2022. (*See Antusas v. Cassidy et al.*, No. 22-cv-00320, Dkt. 1.) Although not consolidated, the cases were deemed related on May 19, 2022. (*See Sopron v. Cassidy et al.*, No. 19-cv-08254, Dkt. 172.).

the City's motion is granted.

## I.   BACKGROUND

As the Court explained in its March 31, 2022 opinion in *Sopron v. Cassidy et al.* (19-cv-08254, Dkt. 157), which resolved various substantive motions, Plaintiffs each spent years in prison after being found guilty of their roles in the double homicide of two thirteen-year-old girls, Helena Martin and Carrie Hovel. Plaintiffs were later released after the Cook County State's Attorney's Office agreed to an order vacating Plaintiffs' convictions and dismissing the reinstated criminal charges against them (19-cv-08254, Dkt. 157 at 6.) Plaintiffs subsequently sued. Of relevance to this Opinion, the City now moves to bifurcate for trial Plaintiffs' claims against the Individual City Defendants from their *Monell* claims against the City, and to stay discovery and trial on Plaintiffs' *Monell* claim. (19-cv-08254, Dkt. 200; 21-cv-05525, Dkt. 123; 22-cv-00320, Dkt. 100.) Plaintiffs oppose bifurcation. (19-cv-08254, Dkt. 211; 21-cv-05525, Dkt. 127; 22-cv-00320, Dkt. 106.)

## II.   LEGAL STANDARD

Rule 42 of the Federal Rules of Civil Procedure governs bifurcation of claims. District courts are permitted to order a separate trial of one or more separate issues or claims "[f]or convenience, to avoid prejudice, or to expedite and economize" the case. Fed. R. Civ. P. 42(b). As the Seventh Circuit has held, if even "one of these criteria is met, the district court may order bifurcation as long as doing so will not prejudice the non-moving party or violate the Seventh Amendment." *Chlopek v. Federal Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007); *see also Houseman v. U.S. Aviation*

3

*Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999) (courts "must be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party"). Whether to bifurcate claims is "committed to the discretion of the district court" and is a decision to be "made on a case by case basis." *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000).

### III. DISCUSSION

#### A. The Parties' Arguments

The City asks the Court to bifurcate for trial Plaintiffs' claims against the Individual City Defendants from their *Monell* claims against the City. (19-cv-08254, Dkt. 200; 21-cv-05525, Dkt. 123; 22-cv-00320, Dkt. 100.) The City makes three main arguments: (1) bifurcation prevents prejudice to all Defendants (*Id.* at 7–10); (2) bifurcation and a stay promotes judicial efficiency (*Id.* at 10–22); and (3) bifurcation would not result in prejudice to Plaintiffs. (*Id.* at 22–25.)

First, the City asserts that bifurcation will prevent prejudice to all Defendants. (*Id.* at 7–10.) With respect to the Individual City Defendants, the City contends that Plaintiffs, through their Complaints and discovery requests, "seek to introduce evidence regarding alleged acts of misconduct by non-party officers over multiple decades to prove their *Monell* claims." (*Id.* at 8); *see also Tanner v. City of Waukegan*, 2011 WL 686867, at *10 (N.D. Ill. 2011) ("If admitted as part of his case against Defendant City of Chicago, such evidence could prejudice the individual defendants' ability to distinguish their own actions from those of other non-party officers."). The City argues that a joint trial would prejudice the Individual City Defendants because

4

it might include evidence that is "wholly unrelated to Plaintiffs' underlying claims" and could lead the jury to "render a verdict based on an alleged history of misconduct in the Chicago Police Department, and not based on the facts of the underlying investigation." (19-cv-08254, Dkt. 200 at 7–8; 21-cv-05525, Dkt. 123 at 7–8; 22-cv-00320, Dkt. 100 at 7–8); *see also Fuery v. City of Chicago*, 2015 WL 715281, at \*3 (N.D. Ill. 2015) ("*Monell* evidence will draw the jury's attention away from resolving the underlying issues of an incident that occurred over seven years ago. Injecting the *Monell* issues into the trial will make the case more complicated and potentially cause juror confusion."). Additionally, without bifurcation, the City argues that "there is a real danger that evidence of the City's alleged wrongdoing would contaminate the mind of the finder of fact, and result in liability by association alone." (19-cv-08254, Dkt. 200 at 7; 21-cv-05525, Dkt. 123 at 7; 22-cv-00320, Dkt. 100 at 7); *see also Lopez v. City of Chicago*, 2002 WL 335346, at \*2 (N.D. Ill. Mar. 1, 2002) ("Without bifurcation, the jury would likely hear evidence against the City of Chicago's various acts of alleged police misconduct committed by numerous non-party officers to establish a policy or practice. Such evidence can be prejudicial to the individual defendants.").

With respect to the City, it argues that it would suffer prejudice because Plaintiffs could—wrongly—have a vehicle to hold the City vicariously liable, or liable under a theory of *respondeat superior*, if bifurcation is not allowed. (19-cv-08254, Dkt. 200 at 9; 21-cv-05525, Dkt. 123 at 9; 22-cv-00320, Dkt. 100 at 9.) To the City, this scenario would invite jurors "to find the City liable for the *Monell* claims if they found

5

Individual City Defendants liable." (*Id.* at 10); *see also EG Milestone v. City of Monroe, Wis.*, 665 F. 3d 774, 780 (7th Cir. 2011) ("There is no *respondeat superior* liability under Section 1983; the Supreme Court 'distinguish[es] acts of the municipality from acts of the employees of the municipality.' ") (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).

Second, the City argues that bifurcating Plaintiffs' *Monell* claims will "serve the goals of judicial economy" because "bifurcation can bring about an earlier disposition of the suit by allowing a bypass of discovery relating to the *Monell* claims, which add significant and possibly unnecessary time, effort, cost, and complication to the discovery process." (19-cv-08254, Dkt. 200 at 11; 21-cv-05525, Dkt. 123 at 11; 22-cv-00320, Dkt. 100 at 11.) The City is concerned that a single trial of all claims against all Defendants will require the parties to simultaneously put on separate cases with "little overlap in discovery on the individual claims and the *Monell* claims," and where the "*Monell* claims are not at the forefront of Plaintiffs' complaints [but] would ostensibly be the most difficult [and time-consuming] to prove" (*Id.* at 12–15.) Defendant asserts that it would be more efficient to have the claims against the Individual City Defendants first, and then, only if necessary, to try the *Monell* claims against the City. (*Id.* at 21–22.) The City further argues that bifurcation promotes judicial economy because Plaintiffs cannot prevail on a *Monell* claim without first establishing an underlying constitutional violation by Individual City Defendants. (*Id.* at 12–15.) Applying that rule, the City contends that, unless Plaintiffs succeed on a claim against the Individual City Defendants, the City cannot be held liable. (*Id.*

6

at 15.) Consequently, any *Monell* discovery—which the City contends is vast and far-reaching—should not commence before the Individual City Defendants are found liable. (*Id.* at 15–22.)

Finally, the City asserts that, if any "Individual City Defendant is liable for violating their constitutional rights, the City is willing to agree to the entry of judgment against it requiring indemnification of the Individual Defendant Officer for compensatory damages and reasonable attorneys' fees . . . circumventing *Monell* litigation entirely." (*Id.* at 23.) As such, the City argues that litigation of Plaintiffs' *Monell* claim and the corresponding discovery is thus unnecessary.

Plaintiffs disagree with each of the City's arguments. (19-cv-08254, Dkt. 211; 21-cv-05525, Dkt. 127; 22-cv-00320, Dkt. 106.) Plaintiffs first contend that the balance of prejudice weighs against bifurcation because the City is mistaken in its belief that "policy and procedure discovery" is synonymous with "*Monell* discovery," but rather "Plaintiff[s] will require much of the same discovery even if [their] *Monell*" claims are bifurcated. (*Id.* at 12.) Plaintiffs argue that the Court can negate any prejudice to Defendants at trial by limiting instructions. (*Id.* at 5–6, 8); *see also Awalt v. Marketti*, No. 11-cv-6142, 2012 WL 1161500, at *13 (N.D. Ill. Apr. 9, 2012) ("A properly instructed jury is fully capable of understanding and considering the evidence that is relevant to each legal theory."). Plaintiffs contend that they would be the ones suffering prejudice from bifurcation because Plaintiffs' claims are "interwoven," and it thus would be "an unreasonable hardship and completely uneconomical to require proof of virtually the same facts in two separate trials."

7

(19-cv-08254, Dkt. 211 at 6; 21-cv-05525, Dkt. 127 at 6; 22-cv-00320, Dkt. 106 at 6); *see also Ratliff v. City of Chicago*, 2012 WL 5845551, at *6 (N.D. Ill. Nov. 19, 2012) (it would be "uneconomical to require proof of virtually the same facts in two separate trials").

Second, Plaintiffs contend that bifurcation would not promote efficiency. Plaintiffs argue bifurcation would instead "cause delays in the final resolution of the Plaintiffs' claims and would drive up the cost of the litigation." (19-cv-08254, Dkt. 211 at 7; 21-cv-05525, Dkt. 127 at 7; 22-cv-00320, Dkt. 106 at 7.) Moreover, Plaintiffs allege that there would be "numerous discovery disputes" about what is "*Monell*-only" discovery and "what discovery properly pertains to policies and practices relevant to Plaintiffs' claims against the Individual City Defendants." (*Id.*)

In addition, Plaintiffs maintain that the City overstates the burden of *Monell* discovery in this case. (*Id.* at 12.) Plaintiffs assert that a "Rule 37 discovery conference would be the proper avenue to continue to address the scope of Plaintiff's policy discovery." (*Id.*) Similarly, the City has not given "any indication that they have made an actual inquiry into the burden of complying. (*Id.* at 12 (citing *Cadle v. City of Chicago, et al.*, No. 15-c-4725, 2015 WL 6742070, at *2 (N.D. Ill. Nov. 2, 2015) ("Hyperbolic words used to characterize an unspecified burden are not enough.")).) Plaintiffs argue that the City lacks a reason to refrain from using the possible "policy and procedure documents" discovered in other similar cases, meaning, as the Court understands, discovery is not burdensome because the City likely already has the documents Plaintiffs seek, and has produced those documents in other cases. (19-cv-

8

08254, Dkt. 211 at 12; 21-cv-05525, Dkt. 127 at 12; 22-cv-00320, Dkt. 106 at 12.) Accordingly, any additional *Monell* discovery is minimal and should not be delayed.

Third, Plaintiffs contend that they are not required to prevail against Individual City Defendants to prevail on their *Monell* claim because *Thomas v. Cook County Sheriff's Department* created an exception to the general rule that municipal liability is contingent upon officer liability. 604 F.3d 293, 305 (7th Cir. 2009). (*Id.* at 9–11.) In *Thomas*, the Seventh Circuit explained that "a municipality can be held liable under *Monell* even when its officers are not unless such a finding would create an *inconsistent* verdict." *Id.*; *see also Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) ("[A] verdict in favor of individual defendants would not necessarily be inconsistent with a plaintiff's verdict on a factually distinct *Monell* claim."). Applying *Thomas*, Plaintiffs argue that "a constitutional violation can be attributed to a municipal policy, even if the individual officers are absolved of liability by the jury." (19-cv-08254, Dkt. 211 at 9; 21-cv-05525, Dkt. 127 at 9; 22-cv-00320, Dkt. 106 at 9.) Plaintiffs thus allege that "even if Plaintiffs' claims against the individual Defendants fail," the City could still be liable under *Monell*. (*Id.* at 10.)

Finally, Plaintiffs say the City's proposed consent to entry of judgment does not alleviate the need for a *Monell* trial. Relying on *Swanigan*, 775 F.3d at 959–62, Plaintiffs say the proposal is procedurally improper because it is not an offer of judgment under Rule 68 of the Federal Rules of Civil Procedure. (*Id.* at 15–16.) This is because the City's offer does not fulfill Plaintiffs' goal of pursuing this litigation with an "eye toward institutional reform." (*Id.* at 8.) Nor does the proposed consent

9

moot Plaintiffs' claims against the City because "an offer to indemnify establishes only the City's vicarious liability under particular circumstances and cannot render moot a claim alleging that it is directly liable for constitutional violations" and because it is simply an "[u]naccepted settlement offer." (*Id.* at 16.)

### B. Bifurcation Is Warranted

A district court has broad discretion to bifurcate claims both for discovery and trial. *Real*, 195 F.R.D. at 620 (whether to bifurcate claims is "committed to the discretion of the district court" and "made on a case by case basis"). For the following reasons, the Court bifurcates Plaintiffs' *Monell* claim for discovery and trial and stays *Monell* discovery.

First, the risk of unfair prejudice to Defendants justifies bifurcation. Plaintiffs seek to admit decades of evidence concerning a number of issues unrelated to the Section 1983 claims. It is possible, perhaps probable, that a jury would, by association, impermissibly tag the Individual City Defendants and the City with unjustified accountability after having been presented with evidence to that effect. *See Dollard v. Whisenand*, 946 F.3d 342, 359 (7th Cir. 2019) ("[T]he concept of guilt by association is repugnant to our notion of elemental justice and fair play.").

Plaintiffs counter this concern by appealing to the availability of limiting instructions. Although it is beyond debate that "limiting instructions are taken very seriously in this Circuit as a tool for reducing or eliminating prejudice, and it has long been the law that juries are presumed to follow them," *McLaughlin v. State Farm Mut. Ins. Co.*, 30 F.3d 861, 870–71 (7th Cir. 1994), there are limits to that rule. *See,*

10

*e.g.*, *United States v. Chaparro*, 956 F.3d 462, 482 (7th Cir. 2020) (noting that although the usual view is that "limiting instructions cure everything," the Seventh Circuit has "made clear" that "this presumption is rebuttable") (citing *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 834 (7th Cir. 2016)). Because of the potentially inflammatory evidence and the nuanced difference between *Monell* and *respondeat superior* liability, this case presents the situation where there is a substantial risk that limiting instructions may be insufficient to ameliorate the potential prejudice to Defendants. At present, the decision to make is not whether to *admit* said evidence: it is whether Plaintiffs' *Monell* claims should be heard by the same jury that hears the claims against the Individual City Defendants. Plaintiffs will still get their day in court on the *Monell* claims.

Because one of Rule 42(b)'s criteria for bifurcation—avoidance of prejudice—is satisfied, the Court is not obligated to address judicial economy and efficiency. *See Chlopek*, 499 F.3d at 700 (If "one of [Rule 42(b)'s] criteria is met, the district court may order bifurcation . . . ."). But addressing them anyway, both sides have persuasive arguments. *Monell* discovery is notoriously burdensome and costly. *See Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1080 (N.D. Ill. 2018) (Willingness to bifurcate comes from recognition that "claims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them.") (cleaned up). But the City already has engaged in *Monell* discovery in other similarly situated cases, which significantly reduces the burden of discovery. And although

11

bifurcation will allow for a more efficient resolution of the claims against the Individual City Defendants, it also delays resolution of the *Monell* claim against the City and requires two separate trials. In the end, however, even if judicial economy and efficiency entirely favored Plaintiffs (which it does not), the Court would still find that the avoidance of prejudice justifies bifurcation.

Bifurcation is not permissible where it would unfairly prejudice a plaintiff. *Chlopek*, 499 F.3d at 700. There is, however, no apparent unfair prejudice to Plaintiffs from bifurcation. Plaintiffs contend that their "profound non-economic interest" in getting "a judgment naming the City itself and holding it responsible for its policies" requires a single trial (19-cv-08254, Dkt. 211 at 8, 15–16; 21-cv-05525, Dkt. 127 at 8, 15–16; 22-cv-00320, Dkt. 106 at 8, 15–16), but nothing about the decision to bifurcate will frustrate that goal. Plaintiffs will still have the opportunity to present their *Monell* evidence, but that opportunity will consist of a second, later trial. And although bifurcation might require Plaintiffs to expend additional resources in preparing for two separate trials, that cost is both justified for the reasons provided above and, to a lesser extent, incident to Plaintiffs' choice to bring a *Monell* claim in this action.

Finally, the parties disagree whether the City's liability depends on the Individual City Defendants' liability.[3] Although determining whether *Heller* or

---

[3] Without deciding the issue, the Court notes that *City of Los Angeles v. Heller*, 475 U.S. 796 (1986) likely governs because *Thomas* created a *narrow* exception to the rule that municipal liability is contingent on officer liability. *Thomas* only applies when the *Monell* claim is "factually distinct" from the claims against the individual officers. *Swanigan*, 775 F.3d at 962.

*Thomas* provides the applicable rule might have an effect on the Court's bifurcation analysis, it would not alleviate the Court's concern with prejudice to Defendants, which is the overarching justification for bifurcation. Moreover, *Thomas* addressed whether a municipality could ever be held liable under *Monell* when individual defendants were found not liable for the underlying episode—not whether that liability should be established in a single trial or separately. *See Thomas*, 604 F.3d at 305 (a municipality "can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict") (emphasis in original). Regardless, the *Heller*-or-*Thomas* issue can be revisited after the Individual City Defendants' potential liability is resolved at the first trial.[4]

For these reasons, bifurcation for trial of Plaintiffs' *Monell* claim from Plaintiffs' remaining claims, and a stay of discovery on the *Monell* claim, is justified.

## IV. CONCLUSION

The City's joint motion (19-cv-08254, Dkt. 200; 21-cv-05525, Dkt. 123; 22-cv-00320, Dkt. 100) to bifurcate and to stay discovery and trial on Plaintiffs' *Monell* claim is granted.

SO ORDERED.

Date: September 22, 2023

JOHN F. KNESS
United States District Judge

---

[4] So too can the issue regarding the City's proposed consent to entry of judgment be revisited after the first trial.

13